Richardo HUFF, Appellee,

v.

MARINE TANK TESTING CORPORATION, Appellee,

and

Edna D. Perry t/a Perry Welding Company, Defendant,

and

Allied Towing Corporation, Appellant.

Richardo HUFF, Appellant,

v.

MARINE TANK TESTING CORPORATION; Edna D. Perry t/a Perry Welding Company; Allied Towing Corporation, Appellees.

Nos. 79–1304, 79–1305.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1980.

Decided Oct. 7, 1980.

John B. King, Jr., Norfolk, Va. (Charles F. Tucker, Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for Allied Towing Corp.

Larry M. Topping, Newport News, Va., on brief, for Edna D. Perry; L. S. Parsons (Parsons & Steffen, Norfolk, Va., on brief), for Marine Tank Testing Corp.

Alan P. Owens, Norfolk, Va. (Smith & Owens, Norfolk, Va., on brief), for Richardo Huff.

Before HAYNSWORTH, Chief Judge, BUTZNER and RUSSELL, Circuit Judges.

HAYNSWORTH, Chief Judge:

The plaintiff suffered burns from a fire which erupted as he was performing welding work inside the tank of a tug boat owned by Allied Towing Corporation. Though Allied's insurer paid him the benefits due under the Longshoremen's and Harbor Workers' Compensation Act, he sued his nominal employer, Edna D. Perry, trading as Perry Welding Company, Allied and Marine Tank Testing Corporation, which had tested the tank for inflammable fumes the day before. Mrs. Perry and Marine Tank Testing Corporation were exonerated upon findings that neither was negligent, but a judgment was rendered against Allied. We reverse, for the plaintiff was Allied's borrowed servant.

I.

Allied Towing Corporation operates a maintenance yard at Norfolk, Virginia. It employs welders on its regular payroll

there, but from time to time it needs more welders than it maintains on its regular employment rolls. It worked out an arrangement with James E. Perry, husband of Edna Perry, pursuant to which the Perrys would supply welders as Allied needed them. Plaintiff, whose permanent residence was in Florida, applied at Allied's gate for welding work. He was hired by James E. Perry and assigned to welding work by an Allied supervisor. He continued in such work regularly for approximately 10 weeks until the occurrence of his injury.

At the time Perry Welding was the nominal or primary employer of four welders doing work for Allied. Perry Welding owned some trucks upon which basic welding equipment was mounted, and these were used by the employees furnished for Allied's use, though Allied provided the supplies which fueled them.

Perry Welding had no other business.

Mrs. Perry's only other employee was her husband, who was paid less than the welders. He testified that when he was not ill, away on vacation or doing something else, he "supervised" the work of Perry employees furnished to Allied. Except for possible maintenance of Perry's trucks and equipment, he probably served as little more than a timekeeper, for the work was assigned entirely by Allied supervisors, and in work assignments Perry employees were treated exactly as Allied employees. Perry welders were not assigned together. They were not assigned to previously agreed work. At the time of his injury, plaintiff was working with another welder who had no connection with Perry.

When James E. Perry was not present, his son, James S. Perry, an Allied supervisor, kept the time of the Perry welders and reported the time to his mother. Mrs. Perry paid the welders on an hourly–rate basis after deducting FICA taxes and required withholding. In turn she charged Allied on a man–hour basis for work done by Perry welders. There was no agreement that Perry welders would undertake or complete any specific task or work. The only agree-

ment was that Perry Welding would supply extra welders to Allied when Allied needed them. Shortly before the time the Perrys' depositions were taken, Allied's need for any extra welder ended, and Perry Welding was temporarily completely out of business.

James E. Perry testified that he was authorized to discharge an incompetent welder working at Allied. The son, James S. Perry, testified that as an Allied supervisor he had the right to put a Perry welder off Allied's work, though he was uncertain whether that authority extended to termination of the welder's employment by his mother. That must have been the practical consequence, however, for the mother had no other need of the services of a welder.

Mrs. Perry maintained no insurance to cover claims against her under the Longshoremen's and Harbor Workers' Compensation Act. She was not qualified as a self–insurer. The Perrys' workers were covered under Allied's insurance and compensation payments by it were required under the provisions of 33 U.S.C.A. § 904(a).

## II.

■ There is a preliminary question of the use of the depositions of Mr. and Mrs. Perry. They were absent from the trial, and their depositions were offered by Allied. The district judge reserved a ruling on their admissibility and the record does not disclose any subsequent ruling. There is no reference to their deposition testimony in his opinion.

Mrs. Perry was a defendant in the case. Their deposition testimony supported Allied's position on the borrowed servant question. In this court, through counsel, they expressed complete agreement with Allied's legal position. At a pre–trial conference the lawyer for the Perrys assured the court that they would be present at the trial and available as witnesses. Thus assured, Allied's lawyer did not request issuance of subpoenas for them. This does not suggest lack of diligence, however, in light of counsel's assurance, for Mrs. Perry was an actual party defendant in the case

and the economic interests of both were at risk.

Rule 32(a)(3)(E) of The Federal Rules of Civil Procedure provides for the admission of depositions in exceptional circumstances in the interest of justice. Such exceptional circumstances were present here. The absence of the Perrys was a completely unexpected turn of events. There was a report that they were ill. Moreover, the interests of justice were clearly served. More than any other witness, they knew of their working relationship with Allied, the crucial subject of inquiry on this branch of the case. All parties had been represented by counsel during the taking of their depositions so that each party had had a full opportunity for cross–examination.

### III.

█ Clearly, Perry Welding was not a sub–contractor within anything approaching the traditional meaning of the word. There was never an undertaking on Perrys' part to accomplish any specific work. Its obligation was fulfilled when it supplied welders and welding equipment. It was a source of supply of manpower to satisfy a temporary need. They functioned substantially as those widely–known suppliers of temporary help—Manpower, Inc. and Kelly Girl, Inc., each of which has been held not to have been the primary employer when injuries occurred in the performance of a temporary job. *Beaver v. Jacuzzi Brothers, Inc.*, 454 F.2d 284 (8th Cir. 1972); *St. Claire v. Minnesota Harbor Service, Inc.*, 211 F.Supp. 521 (D.Minn.1962). Some of the Perry welders may have worked for Allied for longer periods than most of the employees of Manpower and Kelly Girl work for a given temporary employer. If so, however, the duration of the temporary employment does not affect the employment relationship. The Kelly Girl on a one–day assignment is no more the employee of the temporary employer than one whose employment lasts for weeks or months or even years.

*Champagne v. Penrod Drilling Company*, 341 F.Supp. 1282 (W.D.La.1971), aff'd, 459 F.2d 1042 (5th Cir. 1971) actually involved a welder borrowed under similar circumstances. He was held, of course, to have been the employee of the borrowing employer.

The only conceivable difference between those cases and this is the testimony of James E. Perry that he "supervised" Perry welders when he was present. Indisputably, however, their supervision came from Allied supervisors when Perry was not present, and he was not present when the injury occurred and had not been during the preceding week. Moreover, except for the matter of timekeeping, Perry Welding had no concern with the details of the work being done by the welders. It fully performed its part of the bargain when it supplied the equipment and qualified welders who would accept the direction of Allied supervisors. As long as Allied supervisors were satisfied, Mrs. Perry must have been with no need of knowing whether or not her husband would have been.

The work being done was entirely Allied's work. It was solely responsible for working conditions and hazards which might be encountered in the course of the work.[1] During the time that he was technically employed by Perry, the plaintiff worked only at Allied. His wages were not paid directly by Allied, but since Allied paid Perry Welding on a man–hour basis, the relation of Allied to the wages that plaintiff actually received was much less indirect than it would have been if Perry Welding had undertaken to accomplish a specific construction objective by its employees and resources. He did work assigned by Allied supervisors. He was subject to discharge by Allied supervisors if they were dissatisfied with his performance. He worked with other welders directly on Allied's payroll, and he was covered by Allied compensation insurance.

It is of no moment that James S. Perry's supervision of the welders was not close. It

---

1. *See Gaudet v. Exxon Corporation*, 562 F.2d 351, 355, 357 (5th Cir. 1977), for the importance of these factors.

was he who assigned the work to all of the welders, those directly on Allied's payrolls and those extra welders borrowed from Perry Welding, and others. He explained to each welder what was to be done. He was not the only Allied supervisor, however, and close supervision of skilled workers is hardly necessary. More importantly, however, there is no suggestion that Allied's supervision of the work of Perry welders differed in the least from its supervision of welders on its own payroll.

Nor is it of any moment that Allied's acting safety director and shipyard personnel manager noted on the accident report that Huff was not an Allied employee. In a technical sense, the notation was true, and the acting safety director and personnel manager could hardly be expected to know all of the ramifications of the borrowed servant doctrine.

For all practical purposes, Huff was an Allied employee, and since he received compensation from Allied's insurer under the Longshoremen's and Harbor Workers' Compensation Act, he was not entitled to maintain this action against his employer.

The judgment is reversed and the case is remanded with instructions to dismiss the complaint against Allied.

### IV.

Since the findings upon which the judgments for Marine Tank Testing Company and Perry Welding Company are supported by findings not clearly erroneous, those judgments are affirmed.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.*