**Vernon TYSON, Janice Tyson**

v.

**LITWIN CORPORATION**

v.

**HESS OIL V.I. CORPORATION, Third Party Defendant.**

**Appeal of LITWIN PANAMERICAN CORPORATION, Appellant.**

**Nos. 86–3401, 86–3475.**

United States Court of Appeals, Third Circuit.

Argued April 27, 1987.

Decided Aug. 17, 1987.

Britain H. Bryant, Nancy Young (argued), Lee J. Rohn, Law Offices of Britain H. Bryant and Associates, P.C., Christiansted, St. Croix U.S. Virgin Islands, for appellant.

Vincent A. Colianni, Warren B. Cole (argued), Francis J. D'Eramo, Isherwood Hunter and Colianni, Christiansted, St. Croix U.S. Virgin Islands, for appellees.

Before SEITZ, HIGGINBOTHAM and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Litwin Panamerican Corporation (Litwin) appeals from the August 4, 1986 order of

the district court. We have jurisdiction under 28 U.S.C. § 1291 (1982).

## I.

Vernon Tyson is a permanent employee of Hess Oil V.I. Corporation (HOVIC). On April 6, 1984, Tyson was injured when a temporary drainpipe at the Hess refinery malfunctioned. It is undisputed that the drainpipe was installed by Type I Litwin employees supplied to HOVIC.

HOVIC has an agreement with Litwin whereby Litwin employees perform turn-around and maintenance work at the Hess refinery. This agreement divides the work into two classes. Type I work, according to the agreement,

> is defined as that performed by [Litwin's] craftsmen, foremen and supervisors ... where such employees have been loaned to HOVIC and are under HOVIC's direct supervision, direction and control, and [Litwin] has no general or turnaround superintendent assigned to the work. Upon having furnished such personnel to HOVIC, [Litwin] shall not be responsible to HOVIC or liable for the workmanship of such personnel or for any mistake, error or act of negligence of such personnel.

In another section, the agreement provides that HOVIC will defend, indemnify and hold Litwin harmless for all property and personal damages resulting from the performance of Type I work.

Type I employees are required to sign a "rehire form" supplied by Litwin. The form provides:

> 1. HOVIC personnel will control, direct and supervise all aspects of your work.
> 2. At no time should you receive, or act under instructions from Litwin Supervision.

Tyson and his wife brought this personal injury action against Litwin on the theory that Litwin was vicariously liable for the negligence of its employees, the Type I pipefitters. Litwin joined HOVIC as a third party defendant based on its indemnification agreement. Litwin relied on the borrowed employee doctrine for its defense

to Tyson's action. It argued that it had surrendered all authority to control the pipefitter as to the installation of the temporary drainpipe to HOVIC and that the pipefitters were HOVIC's borrowed employees. Thus, said Litwin, it could not be held liable to the Tysons under the respondeat superior doctrine because the pipefitters were not acting as its employees.

Litwin moved for summary judgment, arguing that the negligent pipefitters were, as a matter of law, the borrowed employees of HOVIC. The district court denied the motion.

The case proceeded to a bifurcated jury trial. At the close of the Tysons' case on liability, Litwin unsuccessfully moved for a directed verdict. The jury returned a verdict holding Litwin liable. The jury marked "yes" in response to the special interrogatory "Were the persons who installed the temporary drainpipe on April 6, 1984, subject to the control or the right to control of Litwin Panamerican Corporation as to that specific act?" The jury next considered damages and returned a verdict of $1,150,000.

Litwin moved for judgment n.o.v., a new trial, or remittitur. By order dated June 2, 1986, the district court denied the motions for j.n.o.v. and a new trial on liability. However, the district court ruled that it would grant a new trial on damages unless the Tysons agreed to a reduction of damages to $550,000. The Tysons agreed, and, on June 27, 1986, the district court entered judgment in that amount. The size of the judgment is not an issue on appeal. The district court then certified its June 27, 1986 judgment as final pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. This appeal followed.

## II.

## THE BORROWED SERVANT DOCTRINE

Litwin argues that the negligent pipefitters were, as a matter of law, the borrowed employees of HOVIC as to the negligent act, and Litwin could not be held vicariously liable for the consequences of their neg-

ligence. Our review of this legal issue is plenary. Alternatively, Litwin argues that the record evidence is insufficient to support the jury finding that the pipefitters were under Litwin's control. In reviewing a jury verdict, we view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict winner and ascertain whether there is sufficient evidence to support that verdict. *See Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1273 (3d Cir.1979) (in banc).

### A

We turn first to Litwin's argument that the negligent borrowed pipefitters were, as a matter of law, exclusively HOVIC employees as to the negligent acts. This contention is based primarily on the statement in *Vanterpool v. Hess Oil V.I. Corp.,* 766 F.2d 117 (3d Cir.1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986) that "any assigned Type-I employee would necessarily work under the direct supervision and control of HOVIC."

Whatever the import of the quoted language from *Vanterpool,* it is clear that the court did not evaluate evidence of contemporaneous control by Litwin and HOVIC such as is present here. Our decision in *Vanterpool* is, therefore, not decisive because of proof here that both Litwin and HOVIC exercised some control over the borrowed employees. The control issue is not necessarily a matter of one or the other of two employers. Indeed, the district court here instructed the jury:

> [A] person can be in the employ of two employers, not joint employees [sic], but at one time, as to one act, if the service to one does not involve him abandoning the service as to the other.

*Vanterpool* held that an injured borrowed employee who has made a contract with a borrowing employer is limited to a workers' compensation claim against the borrowing employer. Since Tyson was not a borrowed servant we are therefore not concerned with the contractual limitations applicable to the plaintiff in *Vanterpool.* In our case Tyson is suing the lending employer (Litwin) of the borrowed servants on the theory that Litwin retained sufficient control over them to permit a jury to find Litwin legally responsible, even though the borrowing employer could also be said to have been responsible. As Comment (b) to § 227 of the Restatement (Second) of Agency (Servant Lent to Another Master) notes:

> b. *Inference that original service continues.* In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it.

■ Thus, while the contractual provisions may have controlled the relationship between Litwin and HOVIC in a workers' compensation context, they were not decisive of Tyson's non-contractual claim against Litwin. We say this because the status of the borrowed employees continued to bear a sufficient "control" relationship to Litwin to permit a jury to conclude that they were also Litwin employees at the time of the accident. Litwin was, therefore, not entitled to judgment as a matter of law.

### B

We now address Litwin's alternative argument that the evidence was insufficient to support the jury's finding that the pipefitters supplied by Litwin were under its control in connection with the accident.

■ A number of factors are relevant in determining whether a loaned employee has become the employee of the borrowing employer. Foremost is whether the general employer or the borrowing employer exercises control over the details of the work in addition to supervision of the project generally. *See Standard Oil Co. v. Anderson,* 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909); Restatement (Second) of Agency § 227 comment c (1958); Restatement (Second) of Agency § 220(1) (1958). Further, "a

continuation of the general employment is indicated by the fact that the general employer can properly substitute another servant at any time, that the time of the new employment is short, and that the lent servant has the skill of a specialist." Restatement (Second) of Agency § 227 comment c (1958).

■ In suing Litwin, Tyson asserted that Litwin was liable for the negligence of its employees. For derivative liability to attach Litwin must have borne some responsibility for the conduct of its "loaned" employees when they negligently installed the temporary drainpipe. This question is ultimately a jury issue if sufficient evidence is presented. *See Franks v. Associated Air Center, Inc.,* 663 F.2d 583, 587 (5th Cir. 1981) (Texas law); *Dickerson v. American Sugar Refining Co.,* 211 F.2d 200, 203 (3d Cir.1954) (Pennsylvania law).

Litwin argues that HOVIC's exclusive authority to control Type I employees is conclusively established by the Litwin—HOVIC agreement and the rehire forms. While the contract is probative of at least two factors relevant to the borrowed servant doctrine, namely, the parties' intent in having Litwin employees perform services for HOVIC and the allocation of the right to control and supervise those employees, it is not conclusive of the negligent employees' status in the present context.

■ The record contains sufficient evidence of control to support the jury verdict holding Litwin liable for the negligence of the borrowed pipefitters. A Litwin construction manager, Frank Comly, testified, by deposition, that although a HOVIC supervisor told John Hughes, a Litwin foreman, where to install the drainpipe, Hughes directed his Litwin crew in the actual installation. Accelyn Morton, a HOVIC employee, confirmed this by testifying that the HOVIC foreman would tell the Litwin men where to install a drainpipe and the Litwin pipefitters would go ahead and do the job. Tyson testified that although HOVIC supervisors told Litwin em-

ployees what they wanted done, the HOVIC people relied on Litwin for the performance of the work. Tyson justified this reliance by noting that the pipefitters are skilled workers.

Frank Comly explained the HOVIC—Litwin arrangement at length. He stated that HOVIC informed Litwin of its needs at any particular time and Litwin selected the specific workers to send to HOVIC. These "loanees" entered the HOVIC refinery through a separate entrance and used separate toilet and water facilities. Litwin supplied them with hard hats, safety glasses, and gloves. Litwin was responsible for hiring, firing, paying, insuring, withholding taxes, supplying benefits, and negotiating with the union. HOVIC was not a party to the agreement between Litwin and the union.

Although the evidence is far from overwhelming, given our standard of review, the jury could reasonably conclude that the pipefitters were sufficiently under Litwin's control when they negligently installed the drainpipe resulting in Tyson's injuries to justify the verdict against Litwin as a co-employer.[1]

### III

We find no merit to Litwin's argument that the district court committed reversible error by declining to dismiss the case for failure to join the Commissioner of Labor.

### IV

We next address Litwin's contention that the special jury verdict form was sufficiently objectionable to require reversal. Litwin first objected to question 1:

1. Were the persons who installed the temporary drainpipe on April 6, 1984, subject to the control or right to control of Litwin Panamerican Corporation as to that specific act?

_____YES _____NO

---

1. In view of our liability determination, we need not decide whether the so-called skilled worker exception to the borrowed servant doc-

trine also supported the jury's liability determination against Litwin.

Litwin argues that the phrasing of the question prejudicially slanted the control issue by focusing exclusively on Litwin rather than considering both Litwin and HOVIC. While we think the objection has some merit, we are unwilling to characterize it as reversible error under the circumstances.

■ Litwin also vigorously attacks the phrasing of the question because, it asserts, the wording excludes the possibility of a finding of dual control. However, a finding of dual control would not have relieved Litwin of responsibility to Tyson where, as here, the negligence of employees also subject to Litwin control caused Tyson's injury. Under Virgin Islands law, the "Liability of defendants to plaintiff shall be joint and several,...." 5 V.I.C. § 1451(d) (Supp.1986). Under the common law, when two tortfeasors are jointly and severally liable, each is liable to the plaintiff for the entire harm. Restatement (Second) of Torts § 875 (1979).

■ Litwin next argues that the district court erred in refusing its request to use a verdict form that would reflect the application of the *Murray* credit doctrine. *Murray v. United States*, 405 F.2d 1361 (D.C. Cir.1968). Application of this highly controversial doctrine would result in a reduction in the amount of an injured employee's judgment against a third party tortfeasor where the employer-tortfeasor cannot be sued for contribution. *See Brown v. Ivarans Rederi*, 545 F.2d 854, 858 n. 6 (3d Cir.1976); *Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714, 724–25 (2d Cir.1978).

The use of the *Murray* or equitable credit doctrine seems to run counter to the spirit of the unconditional provision in 5 V.I.C. § 1451(d) that, "Liability of defendants to the plaintiff shall be joint and several...." Furthermore, the government insurance fund of the Virgin Islands is entitled to recover all of its expenses (compensation payments) from the judgment obtained by Tyson. 24 V.I.C. § 263. This, in essence, cancels the compensation benefits received by Tyson. Reducing his judgment still further by application of the *Murray* doctrine hardly smacks of equity.

Since the *Restatements* provide no answer to this issue, and since there is no controlling local law, it is our considered judgment that if the *Murray* doctrine is to be applied in the Virgin Islands, its adoption is best left for legislative consideration. We, therefore, find no error in the refusal of the district court to use a verdict form that would have allowed for the application of the *Murray* doctrine.

We find no merit to Litwin's other contentions.

### V

For the foregoing reasons, the judgment of the district court will be affirmed.

ROSENN, Circuit Judge, dissenting.

Even if the negligent pipefitters were not HOVIC's borrowed employees as a matter of law, I cannot agree that the Tysons presented sufficient evidence of Litwin's continued control over them to support the jury's conclusion that the pipefitters remained Litwin employees for the purpose of this action. I believe the district court should have granted Litwin's motion at the close of all the evidence for a directed verdict. In addition, I disagree with the majority's holding that Litwin's objections to the jury verdict form were meritless, and I would hold that the district court's denial of Litwin's motion to substitute a proper form constituted an alternative basis for reversal.

### I.

Either the borrowing employer, the loaning employer, or both may have respondeat superior liability for injuries caused by the negligence of the borrowed worker. *Standard Oil v. Anderson*, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909). The test is

> whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to the details on the neces-

sary cooperation, where the work furnished is part of a larger undertaking. 212 U.S. at 222, 29 S.Ct. at 254.

All the Litwin employees involved in the installation of the drainpipe were Type I employees. In *Vanterpool v. HOVIC,* 766 F.2d 117 (3d Cir.1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986),[1] a worker's compensation case, the question was whether a Litwin Type I worker injured by HOVIC's alleged negligence was limited to recovery under the worker's compensation statute. Vanterpool was a Type I employee engaged in turnaround work, just as are the employees in question in the present case. Like them, he had signed a rehire form agreeing that at no time should he receive "or act under instructions from Litwin supervision." We noted that in *Anderson* "the Court emphasized the element of control as determinative of the question of vicarious liability." *Id.* at 119, 122–23. Upon examination of the same HOVIC-Litwin agreement as in the present case, we concluded that "any assigned Type-I employee would necessarily work under the direct supervision and control of HOVIC." *Id.* at 120. The district court had held that in light of this agreement and the rehire form, Vanterpool was a borrowed employee of HOVIC as a matter of law. We agreed and affirmed. *Id.* at 121.

The majority apparently rejects the precedent of *Vanterpool* because the court in *Vanterpool* "did not evaluate evidence of contemporaneous control by Litwin and HOVIC such as is present here." Maj. op. at 5. Contrary to the majority's position, however, the court in *Vanterpool,* did deal with the legal effect of the HOVIC-Litwin agreement, the same agreement as is before us in this case, with respect to control of the borrowed employee. As in the instant case, the *Vanterpool* court had before it evidence of some employer functions that were continued to be performed by the general employer while the borrowed employee was on loan status. The court concluded, however, that the evidence of control by the general employer over the borrowed employee at the time of the accident was insignificant. "Borrowed employees, such as Vanterpool, who was borrowed by HOVIC from Litwin remained on the Litwin payroll and Litwin made insurance premiums to the statutory workers' compensation fund.... HOVIC, in turn, reimbursed Litwin for all payroll expenses incurred for borrowed employees, including workers' compensation premiums." *Vanterpool,* 766 F.2d at 120.

As I discuss more fully at a later point, I can see no significant, relevant evidence of dual control in this case shared between Litwin and HOVIC over the borrowed employees responsible for Tyson's accident. There is very little to distinguish the HOVIC-Litwin agreement and the control exercised here from the control over the responsible borrowed employee in *Vanterpool* and the effect of the HOVIC-Litwin agreement that we apparently relied on to a great extent in that case. Accordingly, either because *Vanterpool* is controlling precedent or because the same agreements are at issue and compel the same conclusion in the present case, I would hold that the Type I employees were the borrowed employees of HOVIC as a matter of law.

Even if the question is not resolved as a matter of law, however, I believe that the evidence compels the conclusion that the Type I employees were within HOVIC's control at the time of and with respect to their negligent conduct. The HOVIC-Litwin agreement and the pipefitters' loanee forms, even if not binding upon the Tysons, nevertheless are very strong evidence of HOVIC's control and the pipefitters' status as borrowed employees, particularly in light of our analysis and conclusions in *Vanterpool.* The testimonial evidence of Litwin's construction manager, HOVIC's process operator, the Litwin loanee foreperson, Litwin's office manager, Litwin

---

1. As the majority notes, the *Vanterpool* rule of borrowed employee liability was abrogated by statute with respect to suits by borrowed employees against entities other than their general employees. V.I.Code Ann. tit. 24 § 263a (1986 Supp.). That statute reversed only the operation of the doctrine in those circumstances, however, not the holding in *Vanterpool* that Type I employees are within HOVIC's control and are its borrowed employees.

Type I employees, and of Tyson himself compels the same conclusion.

Litwin retained the right to hire and fire these employees without HOVIC's consent, but apparently did so at HOVIC's behest. HOVIC assessed workers' qualifications and agreed or refused to hire them, or else requested specific people. HOVIC designated which Type I workers would be forepersons. HOVIC chose the type of pipe to be used and the location of the line.

HOVIC alone controlled, directed, supervised, and gave instructions to the TYPE I employees; Litwin had no supervisory control over them. HOVIC was responsible for the day-to-day work and supervision of loanee crews, including loanee forepersons;

Litwin did not control any operative detail of how work was to be done.[2] Ryan Alleyne, a HOVIC supervisor, instructed the pipefitting crew. He asked for installation of the drainpipe and told the loanee employees where he wanted it. John Hughes, a Litwin foreperson on loan to HOVIC, assisted the pipefitters in installing the drainpipe and testified that he personally tightened the pipe. Hughes was a Type I employee, and took all his orders and instruction from HOVIC at all times.[3] Alleyne, a HOVIC supervisor, directed him on the job. Alleyne inspected the completed work and approved it.

The facts upon which the Tysons rely are scanty. Litwin, as in *Vanterpool,* provided

2. Tyson deposed Frank Comly, Litwin's construction manager, who testified as follows:
Q: So, the final authority as to who has hired or fired—who was hired or fired on that job was actually HOVIC's decision; correct?
A: That's correct.
Q: Is it also not correct that HOVIC actually assigns the employees to particular jobs?
A: That's true.
Q: And, where you stated that they were Litwin Panamerican employees on the time sheet, it is not true that those were, indeed, Litwin Panamerican employees who are on loan to HOVIC and at the time they were on loan to HOVIC, they were actually employees of HOVIC?
A: That's correct.
Q: Can you explain to me who supervises Type 1 employees?
    *    *    *    *    *    *
THE WITNESS: Hess.
Q: And, can you define to me the type of supervision that Hess gives Type 1 employees?
A: They tell them everything that is required to do on the job.
Q: Does Litwin have any supervisory control of Type 1 employees when they are with Hess?
A: None.
Q: You stated that Litwin keeps time sheets for HOVIC. Is a timekeeper for HOVIC a Type 1 or Type 2 employee?
A: The timekeeper that keeps the time sheets in question is a Type 1 employee.
Q: As a Type 1 employee, who controls the supervisory ability of that employee?
A: He is supervised and directed by HOVIC.
Q: Are these time sheets prepared for the benefit of Litwin or the benefit of HOVIC?
A: Prepared for the benefit of HOVIC.

3. Hughes testified:
Q: Now, on ... April 6, 1984, what were you in the position of while working at Hess Oil?
A: Foreman.

Q: All right. Now, was that a loanee foreman under this agreement?
A: Loanee foreman.
Q: Under those circumstances, did you agree that at no time would you receive or act under instructions from Litwin supervision?
A: That's correct.
Q: Did you agree that Hess would provide you with safety equipment and would insure that all safety conditions surrounding your work were met?
A: That's what I said.
Q: And, on that day you said John DeWear was your foreman?
A: He was the supervisor.
Q: And, he worked for Hess Oil Virgin Islands Corporation?
A: That's correct.
    *    *    *    *    *    *
Q: Okay. And, what did Mr. [Alleyne, a HOVIC supervisor] tell you to do?
A: Well, he point me out he want a line run from that area come down and go to the sewer line.
Q: All right. Did he tell you how he wanted it run?
A: Well, I take the instructions from him. He just tell me run it that way and come down. He just want a temporary drain line.
Q: And now, he called it a temporary drain line, did he?
A: That's correct.
Q: Did anyone tell you that was a pressurized drain line with hot pitch in it?
A: No.
Q: Did he tell you you had to anchor it because it was pressurized?
A: I'm afraid not.
We note that in any event direction by a loanee foreperson is not inconsistent with a finding of control by the special employer or borrowed employee status. *Vanterpool,* 766 F.2d at 121 n. 3.

services associated with payroll, but appears merely to have been acting as paymaster for HOVIC, which reimbursed Litwin for all Type I employees' wages, taxes, benefits, and insurance. Litwin provided safety gloves and glasses, but HOVIC supplied tools and equipment. Although the Tysons acknowledged that a HOVIC supervisor told John Hughes where to install the drainpipe, Hughes directed his crew in the actual installation. Hughes testified, however, that he was a "loanee foreman" and at no time acted under or received instructions from Litwin as to the pipe installation. *See* n. 3 *supra.* I cannot find the slightest evidence to show that Hughes was acting under Litwin's control in directing the drainpipe installation. The remaining facts supporting the Tysons—the separate entrance and toilet facilities, union negotiations, and the like—are entirely irrelevant to control and are the sort of factors to be considered only when there are no indicia of control more closely related to the particular workers and the particular task.

The Tysons suggest that even under circumstances triggering the borrowed servant doctrine, an exception exists for skilled workers, citing *In re Dearborn Marine Service, Inc.,* 499 F.2d 263 (5th Cir.1974), *cert. dismissed sub nom. Monk v. Chambers & Kennedy,* 423 U.S. 886, 96 S.Ct. 163, 46 L.Ed.2d 118 (1975). In *Dearborn,* the general employer supplied welders, sandblasters, and pipefitters. The special employer decided a valve had to be removed and got three borrowed employees, under its own supervisor, to do the work. One employee negligently welded a pipe. In holding that the general employer was liable, the Fifth Circuit noted that the negligence occurred within the performance of the skilled work for which the employees had been provided, and for which the general employer had represented them to be competent. 499 F.2d at 285. The Tysons acknowledge that *Dearborn* was decided under Texas law, but argue that the court relied on the authority of the *Restatement (Second) of Agency.* Restatements supply rules of decision for Virgin Islands courts

in the absence of local laws to the contrary. *See* V.I.Code Ann. tit. 1· § 4.

The district court accepted the Tysons' "skilled worker" theory, holding that Litwin was the master of the employees and liable for damages caused by their negligence because it held them out as skilled workers and HOVIC accepted them on that basis. Under this test it would be rare for any skilled worker to be a borrowed employee. Control need not extend to direction of technical details of skilled employees' activities; rather, the more important factors are the right to control the time and place of services, for whom the services are done, and the degree and amount of the services. *See* 1C A. Larson, *Workmen's Compensation Law* § 48.30 at 8–502 (1986). Where the special employer controls the manner of work, gives instructions, and supervises and directs the employees' time and activities, the workers' skill is irrelevant. *See A.J. Johnson Paving Co. v. Industrial Comm'n,* 82 Ill.2d 341, 45 Ill.Dec. 126, 130, 412 N.E.2d 477, 481 (1980); *see also Huff v. Marine Tank Testing Corp.,* 631 F.2d 1140, 1143–44 (4th Cir.1980).

*Dearborn* is distinguishable both because it was under Texas law and because there was no written agreement assigning supervisory responsibility. Moreover, in *Dearborn* and in all the cases it cited, the general employer was supplying equipment, unlike Litwin. In such "worker and machine" cases, there is a presumption that the general employer wants to reserve control in order to protect its equipment, and that the employee's duties include maintenance of the equipment, which is work performed for the general employer. *See* A. Larson, *supra,* § 48.30 at 8–505 to 8–510; Restatement (Second) of Agency § 227, comment c. Thus, *Dearborn* does not support the Tysons' theory that this exception to the borrowed employee doctrine rests only on the skill of the worker and not on the element of the machine. Furthermore, neither in *Dearborn* nor in any of the cases it relied upon was there a contract assigning control to the special employer, which resolves the question of control, according to two of the cases relied upon in *Dear-*

*born, Dugas v. Pelican Construction Co. v. McKay,* 481 F.2d 773, 778 (5th Cir.), *cert. denied,* 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973), and *Producers Chemical Co. v. McKay,* 366 S.W.2d 220, 226 (Texas 1963), and as suggested by *Dearborn* itself. 499 F.2d at 285. The other cases upon which the Tysons rely, *Beatty v. Owsley,* 53 N.C.App. 178, 280 S.E.2d 484, 487–88 (1981), *cert. denied,* 304 N.C. 192, 285 S.E.2d 95 (1981), and *Koirtyohann v. Washington Plumbing and Heating Co.,* 471 S.W.2d 217, 218–19 (Mo.1971), are also "worker and machine" cases. The evidence compels the conclusion that the negligent employees were in HOVIC's control at the time of Tyson's injury and were its borrowed servants, and that no "skilled worker" exception applies. I would therefore hold that the district court erred in denying Litwin's motion for a directed verdict.

## II.

I also disagree with the majority's dismissal of Litwin's objections to the jury verdict form as not constituting reversible error. Majority opinion at 1260.[4] I find two flaws in the verdict form serious enough to warrant reversal.

The special verdict form given to the jury asked these six questions:

1. Were the persons who installed the temporary drainpipe on April 6, 1984, subject to the control or right to control of Litwin Panamerican Corporation as to that specific act?

_____YES _____NO

2. Was the temporary pipeline negligently installed?

_____YES _____NO

3. Was the negligent installation of the temporary drainpipe a proximate cause of the accident and injuries to Vernon Tyson?

_____YES _____NO

4. Was the plaintiff Vernon Tyson negligent with respect to the accident of April 6, 1984?

_____YES _____NO

5. Was Vernon Tyson's negligence a proximate cause of the accident and his injuries?

_____YES _____NO

6. If your answer to No. 4 and No. 5 was "YES," please apportion the fault as between Vernon Tyson and Litwin Panamerican Corp.

_____% Vernon Tyson _____% Litwin

Litwin objected, and appeals the judgment based on the impropriety and prejudice of the form. Specifically, the first question asked only about Litwin's control; Litwin maintains it should have been phrased, "subject to the . . . control of Litwin or of HOVIC or of both . . .," or should just have asked open-endedly who had control. Had the jury then answered, "Litwin," the result would have been the same as it was. Had they said, "HOVIC," however, Litwin would have won. I believe that the phrasing was prejudicial because it focused the jury's consideration on Litwin only and psychologically drew the jury's attention away from HOVIC.

Even more problematic, however, is that the phrasing completely precludes a finding of *dual* control, which by the Tysons' admission was a very legitimate possibility. Had the jury found dual control, the liability should have been apportioned between HOVIC and Litwin; even if under the Worker's Compensation Act HOVIC would not have to pay part of the judgment, Litwin's share would be limited to the proportion it was responsible (which, it appears from the evidence, might well be small). This apportionment is called an "equitable credit" or "*Murray* credit," after *Murray v. United States,* 405 F.2d 1361 (D.C.Cir. 1968), in which the court held that a third-party defendant may reduce the amount of its liability to the plaintiff upon a finding that the plaintiff's employer was also negli-

---

**4.** I do agree that the district court's denial of Litwin's motion to dismiss for the Tysons' failure to join the Commissioner of Labor was not erroneous, because the purpose of the statute requiring joinder is for the benefit of the Com-

missioner, not any party, and *is not a jurisdictional requirement.* Moreover, I would hold that Litwin's motion to dismiss on this basis was not timely raised.

gent, even if the plaintiff could not recover from the employer. *Id.* at 1365–66.[5]

When Litwin moved to use a verdict form reflecting the *Murray* credit doctrine, the district court held that the doctrine does not apply in the Virgin Islands because the Virgin Islands comparative negligence statute, V.I.Code Ann. tit. 5 § 1451, is phrased in terms of apportionment among defendants, not tortfeasors. In *Beloit Power Systems v. HOVIC*, 18 V.I. 317 (D.V.I.1981), decided under § 1451, however, the court stated that the statute does not limit contribution to codefendants, and that the use of the word "defendants" does not exclude other forms of contribution. *Id.* at 323–24. Tyson's suggestion that § 1451(d) says that liability of joint tortfeasors is joint and several is at best disingenuous. Subsection (d) refers to "defendants"; indeed, any other tortfeasors *not* defendants could not share liability for a judgment to which they were not subject.

The Tysons argue that the *Murray* doctrine is invalid under the Supreme Court's decision in *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979), disallowing a *Murray*-type credit (although not mentioning *Murray* specifically) and citing to the Restatement (Second) of Torts §§ 879, 880. *Id.* at 260 n. 8, 99 S.Ct. at 2756 n. 8. *Edmonds*, however, was decided not under those Restatement sections, which are in any case inapplicable to master-servant liability; *see* § 875 comment a, but under amendments to the Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C. §§ 901 et seq., with the dissent noting that the fairness rule would have the opposite result. 443 U.S. at 274, 279–81, 99 S.Ct. at 2763, 2766–67 (Blackmun, J., dissenting). Moreover, the Tysons admit that this circuit has specifically stated in *Sarauw v. Oceanic Navigation Corp.*, 622 F.2d 1168, 1175 and n. 8 (3d Cir.1980), *vacated on other grounds*, 451 U.S. 966, 101 S.Ct. 2039, 68 L.Ed.2d 344 (1981), that longshoremen's cases are a specific exception to the *Murray* credit doctrine after *Edmonds*.

Litwin also objected that the jury verdict form was deficient with respect to causation. Affirmative answers to both questions No. 1 and No. 2 do not necessarily mean that the jury found Litwin's employees' negligence was the cause: it could have been Alleyne's, a HOVIC supervisor. He chose the size and length of the pipe and the location of the tie-in, and directed the workers how to lay the pipeline. He failed to tell Hughes the line was pressurized and would therefore need to be anchored. The Tysons' and Litwin's experts testified that these decisions were at least in part the cause of Tyson's injury. I therefore conclude the jury verdict form was critically deficient because it precluded findings of negligence by HOVIC's supervisor or operators and because the findings of negligent installation and control by Litwin of the pipefitters do not mean their negligence and no one else's was the cause of the injury.

### III.

In sum, I would hold that the Type I employees were borrowed servants of HOVIC and that no exception to the assignment of liability under the doctrine applies because the pipefitters were skilled workers. As this was apparent from the *Vanterpool* decision, the HOVIC-Litwin agreement, the loanee workers' rehire forms, and the facts pertaining to the laying of the pipeline specifically, the district court erred in denying Litwin's motion for a directed verdict, if not its motion for summary judgment.

I would also hold that the district court erred in holding that the Virgin Islands does not recognize the *Murray* credit doctrine. Thus, Litwin properly objected to the jury verdict form, which did not allow the possibility of apportionment of responsibility between Litwin and HOVIC, and

---

**5.** In *Gomes v. Brodhurst*, 394 F.2d 465 (3d Cir. 1967) (codified in § 1451(d)), this court explained that the comparative negligence doctrine, the basis for the *Murray* rule, is a "rule of reasoned fairness" that prevents a windfall to plaintiffs. *See also Murray v. Fairbanks-Morse*, 610 F.2d 149, 157–58 n. 11 (3d Cir.1979).

the district court's failure to include in the jury form the possibility of apportionment severely prejudiced Litwin. The form was also fatally deficient with respect to causation. Therefore, even if we were to assume Litwin is not entitled to reversal on the borrowed employee issue, I would vacate the jury verdict and grant Litwin a new trial on the basis of the improper jury verdict form. Accordingly, I respectfully dissent.

Affirmed in part and vacated and remanded in part.