UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ABACUS TEMPORARY SERVICES,
INCORPORATED; TRAVELERS INSURANCE
COMPANY,
Petitioners,

v.

No. 96-2414

PAUL A. HICKS; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(BRB Nos. 94-2542, 95-851)

Argued: June 2, 1997

Decided: June 24, 1997

Before WILKINSON, Chief Judge, and WILKINS and
MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Jimese Lynne Pendergraft, KNIGHT, DUDLEY,
CLARKE & DOLPH, P.L.C., Norfolk, Virginia, for Petitioners.
James J. Vergara, Jr., VERGARA & ASSOCIATES, Hopewell, Vir-

ginia, for Respondents. **ON BRIEF:** Robert A. Rapaport, KNIGHT, DUDLEY, CLARKE & DOLPH, P.L.C., Norfolk, Virginia, for Petitioners.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Timtha King filed a claim under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq., seeking benefits for the children of Paul Hicks on account of his death while working as a crane operator. An administrative law judge awarded the children compensation to be paid by Hicks' employer, Abacus Temporary Services. The Benefits Review Board affirmed. Abacus appeals, arguing that it was not Hicks' employer for purposes of the LHWCA and that the children were ineligible for benefits because they were not Hicks' dependents. We disagree. Abacus is bound by its stipulation that Hicks was an Abacus employee, and the evidence in the record is sufficient to support the ALJ's finding of dependency. Accordingly, we affirm the decision of the BRB.

I.

In 1985, Hicks and King began living together in Petersburg, Virginia. Between 1985 and 1989, the unmarried couple had two children, Vonkelia and Victoria, whom Hicks openly acknowledged as his own. Hicks paid for the family's utilities, groceries, clothing, and medical bills until he left the home in 1989. In 1987, Hicks signed an agreement with the Petersburg Department of Social Services promising to pay child support.

After leaving in 1989, Hicks continued to visit the children regularly at Christmas and on their birthdays, bringing them clothing and

2

other items. However, he stopped paying child support under the agreement, leading King to file a Petition for Support in November 1989. At all relevant times, King was unemployed and had no income other than payments from the Aid to Dependent Children program. The petition was dismissed on April 27, 1990 without prejudice due to an inability to locate and serve Hicks. Until the time of Hicks' death, King never learned of his new address or place of employment. Hicks was employed by Abacus, a temporary services agency, from 1990 until he died in a March 1991 accident while working as a crane operator for Atkinson Dredging Company.

King filed a claim under the LHWCA seeking benefits for her two children on account of Hicks' death. At an October 6, 1993 hearing before an ALJ, the parties stipulated that Hicks had been an employee of Abacus at the time of his injury. The ALJ issued a decision on March 31, 1994, finding that the two children had been dependent upon Hicks when he died and were therefore entitled to benefits under the Act.

In 1994 Abacus sought to avoid liability by filing motions to modify the award and to reopen the record. Both motions sought to evade the company's stipulation, claiming that under the borrowed servant doctrine, Atkinson, not Abacus, had been Hicks' employer at the time of his death. Both motions were denied, and the ALJ's decision was subsequently affirmed by the Benefits Review Board. Abacus now appeals.

II.

Under the LHWCA, if a compensable injury causes an employee's death, a child of the deceased is entitled to benefits. 33 U.S.C. § 909(b),(c). The Act defines "child" to include "a stepchild or acknowledged illegitimate child dependent upon the deceased," 33 U.S.C. § 902(14), with dependency determined as of the time of the injury, 33 U.S.C. § 909(f). The deceased's employer is liable for payment of compensation due under the Act. 33 U.S.C.§ 904(a).

On appeal, Abacus argues that it was not Hicks' employer for purposes of the Act and that the children were no longer dependent on Hicks when he was injured. The company's first contention is fore-

3

closed by its stipulation. As to the second, we find that the ALJ's finding of dependency is supported by substantial evidence and must therefore be affirmed.

A.

Notwithstanding its stipulation to the contrary, Abacus contends that under the borrowed servant doctrine, Atkinson Dredging was Hicks' employer at the time of his death and should be responsible for any compensation award. Abacus makes several arguments in an attempt to get around the stipulation. The company first insists that the ALJ should not have accepted the stipulation because it was contrary to the law and the facts. Abacus maintains that Hicks was clearly the borrowed servant of Atkinson under Huff v. Marine Tank Testing Corp., 631 F.2d 1140 (4th Cir. 1980), because Hicks "performed all his work at Atkinson's work site and was completely under the control of their supervisors, using their equipment." While these factual assertions may be correct, there is no evidence in the record to support them.\* Indeed, the only evidence regarding Hicks' employment relationship with Abacus or Atkinson was the stipulation itself. The ALJ, then, can hardly be faulted for crediting a stipulation into which Abacus had freely entered.

Abacus asserts, however, that the ALJ abused his discretion in refusing to disregard the stipulation and modify the compensation order. The company maintains that the ALJ should have reconsidered the award in light of the Board's subsequent decision in Arabie v. C.P.S. Staff Leasing, 28 B.R.B.S. 66 (1994), which Abacus claims established new law with respect to the borrowed servant doctrine. Even if this claim is correct, an ALJ is authorized to modify a compensation award only "on the ground of a change in conditions or because of a mistake in a determination of fact." 33 U.S.C. § 922. As the language of the statute suggests, this does not authorize modifica-

_____

\*Abacus sought to introduce such evidence via its motion to reopen the record. The administrative record, however, cannot be reopened "except upon a showing that new and material evidence has become available which was not readily available prior to the closing of the record." 29 C.F.R. § 18.54. Abacus makes no claim that this requirement was met here.

4

tion on the basis of a change in the law. <u>McDonald v. Director, Office of Workers' Compensation Programs</u>, 897 F.2d 1510, 1512 (9th Cir. 1990). Moreover, even characterizing the stipulation as a mistake of fact would not aid Abacus; "Section 22 petitions are designed to prevent injustice resulting from the erroneous fact-finding of officials such as an ALJ, not to save litigants from the consequences of their counsel's mistakes." <u>Verderane v. Jacksonville Shipyards</u>, 772 F.2d 775, 780 (11th Cir. 1985) (citations omitted).

Having voluntarily entered into a stipulation agreeing that the company was Hicks' employer at the time of his death, Abacus must live with its terms.

B.

Abacus further contends that the record does not support the ALJ's determination that the children were dependent on Hicks when he died. We must uphold this finding, however, if it is supported by "substantial evidence." 33 U.S.C. § 921(b)(3). "On review, the ALJ's findings may not be disregarded on the basis that other inferences might have been more reasonable. Deference must be given the fact-finder's inferences and credibility assessments, and we have emphasized the scope of review of ALJ findings is limited." <u>Newport News Shipbuilding & Dry Dock Co. v. Tann</u>, 841 F.2d 540, 543 (4th Cir. 1988) (citation omitted). Under this standard, we find no cause to disturb the ALJ's finding of dependency.

While acknowledging that the children were supported by Hicks while he was living with King, Abacus insists that any dependency ceased once he left in 1989. Abacus asserts that the clothing and other items Hicks brought the children following his departure were no more than <u>de minimis</u> gifts. Hicks' ongoing support, however, cannot be so readily dismissed. The clothing and other items represented regular contributions to his children's welfare, and the significance of this support must be considered in light of the ALJ's observation that the family was "virtually destitute." Furthermore, Hicks not only had a legal duty to support the children, <u>see</u> Va. Code § 20-61, but he had also signed a written agreement with the Petersburg Department of Social Services promising to make bi-weekly child support payments and to purchase various necessities such as milk and clothing. Indeed,

5

the fact that Hicks was not providing greater support was due only to the fact that he had managed to evade enforcement of his legal obligations. The LHWCA is designed to assist needy children bereft of parental support due to a covered employee's death. It would be ironic to deny impoverished children benefits under the Act only when their fathers were able to successfully avoid the duty to pay child support.

Abacus also maintains that the children were dependent on public assistance rather than Hicks, pointing to payments King received from the Aid to Dependent Children program. The fact that the children received modest public assistance cannot defeat their claim, however. "It is well settled that partial dependency will support an award under the statute." Myers v. Bethlehem Steel Co. , 250 F.2d 615, 616 (4th Cir. 1957). The LHWCA requires complete dependency only when a child is married or over the age of eighteen. 33 U.S.C. § 902(14). In Myers, the court held that a grandchild was dependent on a deceased employee even though the daughter of the deceased was employed and able to pay for her and her child's room and board. The court was "not impressed by the argument that the child should be deemed to have been supported by the meager earnings of the daughter and that the contributions made by deceased were not necessary to its support and should be considered as mere gifts to the daughter. The evidence shows that they were made for the support of the child." Id. at 617.

Our task on appeal is a limited one. We inquire only whether the ALJ's decision had a reasonable foundation in the record. In light of the above considerations, we conclude that the ALJ's finding that the children were dependent on Hicks at the time of his death was properly supported by substantial evidence.

III.

For the foregoing reasons, we affirm the judgment.

AFFIRMED

6