Douglas F. WHITE, Plaintiff–
Appellant,

v.

BETHLEHEM STEEL
CORPORATION, Defendant–Appellee,

and

Krupp Lonrho GmbH Seeschiffart,
Defendant.

No. 99–2457.

United States Court of Appeals,
Fourth Circuit.

Argued: June 6, 2000

Decided: Aug. 2, 2000

**ARGUED:** Edward J. Lilly, Law Offices Of Peter G. Angelos, Baltimore, MD, for Appellant. Benjamin Rader Goertemiller, Albright, Brown & Goertemiller, L.L.C., Baltimore, MD, for Appellee. **ON BRIEF:** Roger A. Doumar, John B. Bratt, Law Offices Of Peter G. Angelos, Baltimore, MD, for Appellant.

Before WILKINSON, Chief Judge, MURNAGHAN, Circuit Judge, and HERLONG, Jr., United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge MURNAGHAN and Judge HERLONG joined.

## OPINION

WILKINSON, Chief Judge:

This case presents the question of whether appellant Douglas F. White was a borrowed servant of appellee Bethlehem Steel. The district court found that he was a borrowed servant, and thus an employee of Bethlehem Steel for purposes of the Longshore and Harbor Workers' Compensation Act (LHWCA). Because the LHWCA mandates that an employee's sole remedy with regard to his employer is through the LHWCA, the court dismissed White's tort action. *See* 33 U.S.C. § 905(a) (1994). Because White was under the authoritative direction and control of Bethlehem Steel at the time of his injury, we affirm the dismissal of his suit.

### I.

For twenty-six years, Douglas White worked as a heavy equipment operator for

C.J. Langenfelder & Son, Inc. Langenfelder rented its construction equipment and the employees who operated that equipment to various companies, among them Bethlehem Steel. Of the approximately 500 employees who worked for Langenfelder, about 100 were assigned to Bethlehem Steel.

Langenfelder and Bethlehem Steel had a contract specifying the terms of agreement between the two companies. The contract stated that Langenfelder would maintain "exclusive direction, supervision [and] control" over its workers. While the contract between the two parties expired on December 31, 1993, it apparently continued to govern the parties' relationship at the time of the incident in question. Although Langenfelder paid its employees' wages and insurance, it passed those costs through to Bethlehem Steel.

For all but two weeks of White's twenty-six year tenure, he worked at Bethlehem Steel. Langenfelder would tell White where to report within Bethlehem Steel. Approximately one-eighth of the time, White was assigned to the New Ore Pier within the Bethlehem Steel yard. At the New Ore Pier, only Bethlehem Steel employees supervised White. When White arrived at the pier, a Bethlehem Steel foreman would tell him where to go. If a work-related problem arose, Bethlehem Steel supervisors would resolve it. Over the course of White's twenty-six years at the pier, no Langenfelder employee ever supervised his work. Bethlehem Steel also reserved the right to reject any Langenfelder employee at any time. If Bethlehem Steel dismissed a Langenfelder employee, Langenfelder would have no choice but to terminate that individual.

On August 24, 1995, White was working on the M/V JUNIPER, which was berthed at the New Ore Pier. After his shift ended, White attempted to exit a hold of the JUNIPER by ladder. As he climbed the ladder, he slipped and fell, injuring himself. White maintains that his injury was caused by a lack of light in the hold.

White received workers' compensation for his injury under the LHWCA.

White also sued Bethlehem Steel, alleging that the company was negligent for allowing him to remain in the hold after dark without any light source, for failing to supervise him adequately, and for failing to provide him with any assistance in exiting the hold. The district court dismissed White's action, reasoning that although the LHWCA allows an employee to pursue personal injury actions against third parties, it does not allow an employee to maintain a tort action if the employee is a borrowed servant. The district court then concluded that White was a borrowed servant of Bethlehem Steel due to the control that Bethlehem Steel supervisors exercised over him, the length of his tenure at Bethlehem Steel, and the pass-through arrangement by which Bethlehem Steel would effectively pay his wages and insurance. The court further concluded that the ability of Bethlehem Steel to exclude him from the work site effectively gave the company the power to fire him. White now appeals.

## II.

### A.

The LHWCA is a no-fault federal compensation scheme designed to give protection to injured maritime workers while at the same time affording employers some degree of predictability with regard to those workers' recoveries. *See Rodriguez v. Compass Shipping Co.*, 451 U.S. 596, 616, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981). Covered employees cannot bring a personal injury action against their employer; their only remedy with regard to their employer is through the LHWCA. *See* 33 U.S.C. § 905(a). In 1972, Congress substantially increased the level of no-fault compensation. During the debate on the 1972 amendments, maritime employers took the position that they could provide higher benefits "only if the LHWCA were to again become the exclusive remedy

against [the employer] as it had been intended since its passage in 1927 . . . ." *Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935, 948 (3d Cir.1990) (internal quotation marks omitted). Thus, a central purpose of these changes to the LHWCA was to "minimize the need for litigation as a means of providing compensation for injured workmen." *Rodriguez*, 451 U.S. at 616, 101 S.Ct. 1945; *see also Peter,* 903 F.2d at 952 ("The Act is premised on the notion that employers will accept the burden of no-fault compensation recovery in exchange for predictable liability for injuries suffered by workers.").

■ While the LHWCA does not explicitly adopt the borrowed servant doctrine, the word "employer" in 33 U.S.C. § 905(a) encompasses both general employers and employers who "borrow" a servant from that general employer. *See Huff v. Marine Tank Testing Corp.*, 631 F.2d 1140 (4th Cir.1980); *Peter,* 903 F.2d at 938–39; *Gaudet v. Exxon Corp.*, 562 F.2d 351 (5th Cir.1977). A person can be in the general employ of one company while at the same time being in the particular employ of another "with all the legal consequences of the new relation." *See Standard Oil Co. v. Anderson,* 212 U.S. 215, 220, 29 S.Ct. 252, 53 L.Ed. 480 (1909). In order to determine whether an employee is a borrowed servant, courts "must inquire whose is the work being performed . . . by ascertaining who has the power to control and direct the servants in the performance of their work." *Id.* at 221–22, 29 S.Ct. 252. The Supreme Court noted, however, the importance of "distinguish[ing] between authoritative direction and control, and mere suggestion as to details or the necessary cooperation." *Id.* at 222, 29 S.Ct. 252.

■ The authority of the borrowing employer does not have to extend to every incident of an employer-employee relationship; rather, it need only encompass the servant's performance of the particular work in which he is engaged at the time of the accident. *See id.* at 220, 29 S.Ct. 252;

*McCollum v. Smith,* 339 F.2d 348, 351 (9th Cir.1964). When the borrowing employer possesses this authoritative direction and control over a particular act, it in effect becomes the employer. In that situation, the only remedy of the employee is through the LHWCA.

### B.

■ In order to determine direction and control, a court may look at factors such as the supervision of the employee, the ability to unilaterally reject the services of an employee, the payment of wages and benefits either directly or by pass-through, or the duration of employment. Ultimately, any particular factor only informs the primary inquiry—whether the borrowing employer has authoritative direction and control over a worker.

In *Huff v. Marine Tank Testing Corp.,* this court confronted the same issue presented in the case at bar. We held that the employee was a borrowed servant because he was "for all practical purposes" an employee of the borrowing company. *Huff,* 631 F.2d at 1144. In *Huff,* the plaintiff technically worked for Perry Welding Company, but did all of his actual labor for Allied Towing Corporation. In support of the holding that Huff was a borrowed servant of Allied's, we noted that the jobs performed were entirely Allied's work, that Huff was under Allied's supervision, that Huff was subject to discharge by Allied, and that Huff worked at Allied the entire time he was technically employed by Perry. In reaching this conclusion, the *Huff* court implicitly adopted the test that we explicitly adopt today by focusing on factors that determine whether the borrowing employer can control and direct the employee. *See id.* at 1143–44; *see also Parker v. Joe Lujan Enterprises,* 848 F.2d 118, 120 (9th Cir.1988) (adopting the "authoritative direction and control" test from *Standard Oil* in the workers' compensation context).

Here, the district court applied a nine-part test to determine whether White was a borrowed servant of Bethlehem Steel. *See, e.g., Alday v. Patterson Truck Line, Inc.,* 750 F.2d 375, 376 (5th Cir.1985). This court in *Huff* did not adopt that nine-part inquiry, and we decline to do so now. A nine-part probe provides insufficient guidance to prospective litigants about the application of a legal standard, as the Fifth Circuit itself has intimated. *See Gaudet,* 562 F.2d at 357. *But see Billizon v. Conoco, Inc.,* 993 F.2d 104 (5th Cir.1993) (applying the nine-part test). The authoritative direction and control inquiry will more efficiently resolve a plaintiff's borrowed servant status than a nine-factor balancing calculus.

### III.

White contends that he was not the borrowed servant of Bethlehem Steel, and that the district court erred in dismissing his tort suit. We disagree. Applying the authoritative direction and control test to his employment situation, we hold that White was a borrowed servant of Bethlehem Steel.

The very fact that White is bringing this lawsuit against Bethlehem Steel is strong evidence of the extent of Bethlehem Steel's control over him. White is suing for breach of a duty of care, which presumes that Bethlehem Steel had a duty in the first place. Indeed, White's complaint admits that he was working under "the *supervision and participation* of Defendant Bethlehem Steel Corporation, its agents, servants and/or employees" (emphasis added). Moreover, White alleges that Bethlehem Steel's *failure* to supervise was itself a negligent act. White cannot have it both ways. Although undoubtedly a worker can bring a personal injury action against a third party, the nature of White's allegations are evidence in and of themselves that Bethlehem Steel was supervising and controlling him.

White argues, however, that since the expired contract continued to govern, and

since the contract specifically acknowledged that Langenfelder employees would remain under the direction and control of Langenfelder itself, a genuine issue of material fact exists that must be presented to the jury. We disagree. The overwhelming weight of the undisputed evidence in this case, much of it from White himself, shows that Bethlehem Steel maintained authoritative direction and control over White. In actual practice, White worked just as if he were a Bethlehem Steel employee. Bethlehem Steel supervised him over a twenty-six year period, Bethlehem Steel assigned him to the ships where he would work, Bethlehem Steel paid his wages and insurance premiums in pass-through form, and Bethlehem Steel could effectively fire him by excluding him from the job site. Indeed, White in his deposition repeatedly acknowledged that Langenfelder never supervised him during the quarter-century he worked at the pier.

The fact that an expired contract said something different does not change the true nature of the relationship. *See, e.g., Gaudet,* 562 F.2d at 357–59 (granting summary judgment in favor of the borrowing employer, despite the existence of a contract proclaiming that the original employer maintained control, because the other undisputed facts showed that the employee was a borrowed servant). Allowing a case this clear to go to the jury would undercut the value of the worker's compensation system, which is predicated on a no-fault regime and quick recovery. *See Artis v. Norfolk & Western Railway Co.,* 204 F.3d 141, 144 (4th Cir.2000) (The LHWCA and other workers' compensation statutes "are designed to provide *quick* [and] *certain* relief for work related injuries.") (internal quotation marks omitted). A trial on such undisputed facts would harm the very workers who are injured by creating incentives for employers to distrust the workers' compensation system and to work against its operation.

## IV.

White was under the authoritative direction and control of Bethlehem Steel while he worked at the New Ore Pier. Consequently, he was a borrowed servant and the LHWCA is his exclusive remedy. Accordingly, the judgment of the district court dismissing his tort suit is

*AFFIRMED.*