# BELOIT POWER SYSTEMS, INC., and KEMPER INSURANCE COMPANIES, INC., Plaintiffs

## v.

# HESS OIL VIRGIN ISLANDS CORP., Defendant

Civil No. 1980/94

District Court of the Virgin Islands

Div. of St. Croix

January 28, 1981

DAVID V. O'BRIEN, ESQ., Christiansted, St. Croix, V.I., *for plaintiffs*

BRITAIN H. BRYANT, ESQ., Christiansted, St. Croix, V.I., *for defendant*

FINCH, *Judge*

## MEMORANDUM OPINION AND ORDER

This case is before the Court on defendant's motion for judgment on the pleadings pursuant to Rule 12(c) Fed. R. Civ. P. on Count Two of plaintiff's amended complaint. Defendant avers that this count fails to state a cause of action. Under Rule 12(h)(2) Fed. R. Civ. P. this defense, taken as equivalent to a failure to state a claim upon which relief can be granted, is appropriate to a motion for judgment on the pleadings. However, for the reasons stated below, this motion is denied.

Count Two of the amended complaint prays for contribution from Hess Oil Virgin Islands Corporation (hereafter "HOVIC") to the judgment paid by Beloit Power Systems (hereafter "Beloit") in the case of Norwilton Murray v. Fairbanks Morse, Beloit Power Systems (D.C.V.I., St. Croix, Civ. No. 76/539). Mr. Murray recovered a judgment of $1,937,500.00 from Beloit for an injury sustained while working on equipment which Beloit manufactured. Beloit now claims that HOVIC is a joint tortfeasor in that it was negligent in its supervision and control of the equipment Mr. Murray was injured on, and thus Beloit is entitled to contribution from HOVIC.

The argument of defendant HOVIC for judgment on the pleadings is that even if HOVIC were a joint tortfeasor, the law of the Virgin Islands only allows for contribution between joint tortfeasors where they are both defendants in the same action. Defendant points specifically to 5 V.I.C. § 1451, enacted in 1973, for the proposition that

only defendants in the same action are entitled to contribution. The relevant paragraph of 5 V.I.C. § 1451 reads:

> Where recovery is allowed against more than one defendant, the trier of fact shall apportion, in dollars and cents, the amount awarded against each defendant. Liability of defendants to plaintiff shall be joint and several but, for contribution between defendants, each defendant shall be liable for that proportion of the verdict as the trier of fact has apportioned against such defendant.

Citing 18 Am.Jur.2d Contribution § 42 (1965) defendant HOVIC advances the argument that since this statute changes the common law, it should be strictly construed; and strictly construed, it only provides for contribution among defendants. Reading the statute as explicitly excluding methods of contribution not mentioned within, defendant HOVIC points to Beloit's failure to implead HOVIC in the original action as a bar to any claim for contribution now.

■ The initial task, then, is to determine whether Virgin Islands law does forbid contribution between parties who are not defendants in the same action. This determination involves statutory construction of the Virgin Islands comparative negligence statute, 5 V.I.C. § 1451. Before treating that issue specifically, a brief, selective overview of the law of contribution would be helpful. The common law rule, articulated in Merryweather v. Nixan, 101 Eng. Rep. 1337 (1799), was that no right of contribution exists among joint tortfeasors. This rule stems from the public policy that the law will not recognize equities springing from a wrong in favor of one involved in committing it. However, it has been pointed out that the public policy reasons against contribution apply only to cases of intentional wrong: the punishment factor in making a party potentially liable for the full amount of damages should not apply to negligent behavior. Cf. 18 Am.Jur.2d Contribution § 34 (1965). Perhaps for this reason, in recent years the trend has been towards recognition of the right of contribution, and many if not most states have developed statutory or judge-made exceptions to the rule of noncontribution. See RESTATEMENT (SECOND) OF TORTS § 886a. The Uniform Contribution Among Tortfeasors Act was approved by the National Conference of Commissioners on Uniform State Laws, and the American Bar Association in 1939, and revised in 1955; so far, 19 states have adopted it. There is wide variation among states as to the availability and mode of contribution among tortfeasors.

Contribution among joint tortfeasors was initiated in the Virgin

319

Islands in the case of Gomes v. Brodhurst, 394 F.2d 465 (3rd Cir. 1967). That case instituted a comparative negligence system among joint tortfeasors at the same time it announced the rule allowing contribution. 5 V.I.C. § 1451 is the codification of that comparative negligence system. Verge v. Ford Motor Co., 581 F.2d 384, 390 n.7 (3rd Cir. 1978). Gomes does not specifically address the issue of contribution among nondefendants: the parties in that case were fellow defendants. (There is no contribution in the Virgin Islands from a tortfeasor who has settled with a plaintiff: thus, in addressing the question of contribution among nondefendants, this opinion assumes that the parties have not settled with plaintiff.) This Court must interpret the comparative negligence statute 5 V.I.C. § 1451 to decide whether the use of the word "defendant" in § 1451(d) limits contribution to fellow defendants.

The chief question is whether the Virgin Islands Legislature was at all addressing the issue of who could obtain contribution from whom when it enacted § 1451. The Court will first consider defendant HOVIC's arguments that § 1451 does answer this question; thereafter, it will proceed to an analysis of the statute.

HOVIC states that "joint judgment" statutes, i.e., statutes which allow for contribution between joint judgment defendants, are to be strictly construed, since the effect of the statute is to change the common law and create rights which did not exist previously. HOVIC cites 18 Am.Jur.2d Contribution §§ 42 and 53 (1965) for this proposition.

This argument is not persuasive. One, § 1451 is not a "joint judgment" statute: there is no mention in the statute that judgment be rendered jointly against defendants, and HOVIC does not contest that contribution may be had from impleaded defendants. Two, though joint judgment statutes have been traditionally construed so as to eliminate contribution in other situations, this is not necessarily the case. For example, the West Virginia joint judgment statute reads:

> Where a judgment is rendered in an action ex delicto against several persons jointly, and satisfaction of such judgment is made by any one or more of such persons, the others shall be liable to contribution to the same extent as if the judgment were upon an action ex contractu.

W. Va. Code § 55-7-13. In Haynes v. City of Nitro, W. Va., 240 S.E.2d 544 (1977) the Supreme Court of Appeals of West Virginia

overruled its earlier decisions of Bluefield Sash and Door Company, Inc. v. Corte Construction Co., W. Va., 216 S.E.2d 216 (1975) and Rouse v. Eagle Convex Glass Specialty Co., 122 W. Va. 671, 13 S.E.2d (1940) which had cited § 55-7-13 for the proposition that there is no right of contribution in West Virginia in the absence of a joint judgment. The Court in Haynes interpreted the statute minus the prohibition:

> This statute was originally enacted in 1872–73. It appears to foreclose any doubt that when a judgment is found against joint tort-feasors, any defendant who pays it can collect from the others. But somehow, this Court and the federal courts have found that the statute forecloses contribution between joint tort-feasors in the absence of a joint judgment. It does not. It merely provides that any one or more of joint tort-feasors who are in judgment and who pay it, have rights of contribution against their fellow joint tort-feasors.[1]

This Court cites Haynes solely for the proposition that even joint judgment statutes do not *necessarily* exclude contribution in other situations.

Three, as shown in Haynes v. City of Nitro, the general trend is towards liberalizing the limitations on contribution. The sentence in 18 Am.Jur.2d Contribution § 42 (1965) *after* the one cited by defendant HOVIC for the proposition that statutes in derogation of the common law should be construed strictly states:

> On the other hand, the view has been taken that since such a statute involves the doctrine of contribution, and since that doctrine is equitable in nature, the doctrine should be applied liberally; and there is also authority that a joint tortfeasor contribution act is to be broadly construed.

Also, the proposition that statutes in derogation of the common law should be construed strictly does not literally apply here, since § 1451 is a codification of the judicially created comparative negligence scheme of Gomes v. Brodhurst, supra. Section 1451 ratifies the judicial rule which Gomes fashioned. In addition, the rule that statutes in derogation of the common law are to be strictly construed has been the object of much modern criticism, as having no real probative force for the purpose of establishing what the Legislature intended. Sands, Sutherland Statutory Construction, 4th Ed. § 61.04 (1975).

---

[1] Haynes v. City of Nitro, W. Va., 240 S.E.2d 544, 547 (1977).

Thus, HOVIC's argument based on strict construction of joint judgment statutes is not apt. The correct interpretation of § 1451(d) is not susceptible to that formula. In an article discussing the recent comparative negligence statute of Pennsylvania, then Professor (now Judge) Robert Keeton of Harvard summarized a formula for proceeding when a comparative negligence statute is urged as controlling:[2]

### Comparative Negligence

1. If the statute addresses the issue at hand and plainly resolves it in a constitutionally permissible way, then apply the mandate of the statute.

2. If the issue at hand is one beyond that core area—that is, if the statute does not address and resolve it—then defer to the statute's manifestations of principle and policy to extent that they are relevant.

3. Subject to the first two propositions, seek to resolve the issue at hand in a way that produces the best total set of rules, including those rules within the core area of the statute and other cognate rules of law, whatever their source. In making a decision on the issue at hand, defer to the statute's manifestations of principle and policy to the extent that they are relevant, and consider as data all the strictly applicable statutory mandates and related judicial precedents. A proper decision should be consistent with an even-handed system of rules for resolving both this issue and all cognate issues. Note that the judicial formulation of a rule when the statute does not provide a clear mandate need not constitute improper judicial legislation. First, the legislature did not forbid such "legislating" and it may have assumed that judges would formulate rules to "fill in the gaps" in the statutory structure rather than blindly letting the status quo rule. Second, it has been the historical function of judges to "develop" law to the extent necessary to decide disputes before them—especially in such traditional common law areas as tort law.

---

[2] The suggested guidelines for judging are adapted from a memorandum prepared for the Federal Appellate Judges Conference in Phoenix, Arizona, Oct. 29, 1976, and are based upon views stated in R. Keeton, Venturing To Do Justice 94–95 (1969), and Statutes, Gaps and Values in Tort Law (Roy R. Ray Lecture, Southern Methodist University School of Law, Feb. 24. 24, 1978), also published in 44 J. of Air Law & Commerce (1978), H. Hart & A. Sacks, The Legal Process, 1413–17 (ten. ed. 1958). See also Frankfurter, J., in Universal Camera Corp. v. NLRB, 340 U.S. 474, 487 (1951), and materials collected in R. Aldisert, The Judicial Process 170–235 (1976).

4. In determining whether a statute addresses the issue at hand, dispense with unrealistic assumptions about the legislative process. Treat legislative history not as a statutory mandate but only as data; declarations in legislative history should be seen as no more than the *obiter dicta* of the legislative process. If it is necessary to resort to legislative history, apply paragraphs 2 and 3, not paragraph 1 above. Also, do not treat the legislature's failure to provide a mandate as itself a (contrary) mandate. "Not Speaking" to an issue may simply stem from time or resource constraints rather than a conscious policy. Similarly, failure to enact legislation will rarely be a significant datum, and when it is, paragraphs 2 and 3 again apply; just as with mandates for legislation, such failure to enact legislation should rarely be treated as a conscious legislative directive (paragraph 1).

Although a legislature can solve problems by appealing to a broader range of potential solutions than those available to courts, it cannot act in relation to every event. When the legislature has not acted (and thus, when there is no controlling statute), the court should aim for the best solution available to it.

Following these guidelines; this Court looks to these factors to interpret the meaning of § 1451, in descending importance:

1. The words of the statute itself
2. Legislative history of the statute
3. Related judicial precedent

The most noteworthy aspect for our case in a reading of § 1451 is how little application that statute has to the issue of contribution. Section 1451 is primarily a comparative negligence rather than a contribution statute. The chief subject is the elimination of the bar to recovery of contributory negligence, and the formulation of a method of apportioning damages. Only one of the five paragraphs of § 1451, § 1451(d), even refers to contribution. The use of the term "defendant" in § 1451(d) follows the use of that term in the previous paragraphs. There is no evidence within the statute that this word was used in order to forbid contribution between nondefendants.

■ The "plain language" of the statute does not in itself clearly limit contribution to defendants. Indeed, the sentence in § 1451(d) mentioning contribution is most plausibly read as primarily concerned with explaining the comparative negligence scheme, rather than concentrating on the contribution issue. This sentence explains

that while liability of defendants to plaintiff is joint and several, amongst themselves contribution is proportional. The emphasis here is on how the liability is spread, not to whom. There is no evidence that the term "defendants" was chosen specifically to limit contribution to co-defendants. True, the word "tortfeasor" might have been used; but the difference is not significant. § 1451(d) begins:

When recovery is allowed against more than one defendant . . . .

Rather than encompassing the field of contribution, this statute on its face speaks of a particular situation and the form of apportionment appropriate to that situation. This Court does not interpret this statute as exclusionary regarding contribution. That is, by mentioning one form of contribution § 1451(d) does not thereby exclude all other forms. If that were the aim of the legislature, it could have made itself clear. For example, the state of Texas Legislature did so in Tex. Rev. Civ. Stat. Ann. art. 2212a § 2g (Vernon Supp. 1978–1979), providing that

[a]ll claims for contribution between named defendants in the primary suit shall be determined in the primary suit, except that a named defendant may proceed against a person not a party to the primary suit who has not effected a settlement with the claimant.

It is noteworthy that this limiting paragraph in the Texas statute specifically allows the contribution procedure at issue in the instant case, i.e., a defendant proceeding in a second suit against a nonparty to the original suit. The specificity of this Texas statute on the procedural question of contribution reveals the paucity of guidance in § 1451 on this issue.

■ The legislative history of § 1451 contained in the transcript of the Jan. 31, 1973, regular session of the Tenth Legislature of the Virgin Islands reveals that the Legislature was centrally concerned with removing the contributory negligence bar to recovery in enacting § 1451. There is nothing in the transcript on the contribution issue: all discussion relates to comparative negligence. The admonitions of Judge Keeton to dispense with unrealistic assumptions about the legislative process, and to avoid treating a failure to enact a mandate as a contrary mandate, are helpful here. The evidence points to the conclusion that in enacting § 1451 the Legislature was not concerned with the issue of the method of contribution, and that use of the term "defendants" in § 1451(d) held no special significance. Neither the language of the statute nor its liberalizing inten-

tions support a reading whereby the discussion of contribution between defendants is held to exclude other forms of contribution. HOVIC would have us interpret the silence of the Legislature as a bar to the forms of contribution it has not particularly allowed. Judge Keeton's guidelines support this Court in reaching a contrary result.

Gomes v. Brodhurst, supra preceded § 1451 in introducing comparative negligence to the Virgin Islands. (In the discussion on Bill No. 5742 (§ 1451), a senator referred to criticism of the old contributory negligence rule by a Third Circuit Judge.) If Gomes contained some clear language on the issue of mode of contribution, it would be appropriate to include this by implication in an interpretation of § 1451. The manifestations of policy and principle in Gomes, absent explicit disavowal, are part of the proper statutory construction of § 1451. Gomes is a "related judicial precedent."

■ While Gomes did not address the issue of contribution between nondefendant tortfeasors, there is general language of policy in Gomes concerning the right of contribution which provides some guidance:

> We approach the issue [right of contribution] with full recognition that the result we reach should be consistent with the longstanding policy considerations underlying any system of contribution: the encouragement of voluntary settlements, the equitable distribution of liability among joint tortfeasors, and the elimination or minimization of collusion. . . . There is no longer a legitimate place in our system, if, indeed, there ever was, for a rule of law which places the full burden of restitution upon one who is only in part responsible for a plaintiff's loss.[3]

These policies are generally furthered by allowing contribution between non-defendants. A tortfeasor who is not joined in a suit still may have an incentive to settle with a plaintiff if he knows that he may later be found liable in a second suit. The possibility of collusion is minimized if a defendant is not put to the choice of either impleading a tortfeasor in the original suit or losing any chance at contribution. A defendant is vulnerable to being "whipsawed" when he impleads another party; plaintiff and third-party defendant could combine in "pointing the finger" at defendant. The opportunity to bring a second action for contribution allows defendant to make the tactical decision whether or not the advantages to a unified trial

---

[3] Gomes v. Brodhurst, 394 P.2d 465, 468 (3rd Cir. 1967).

will be outweighed by possibilities of collusion. Finally, the equitable consideration of spreading loss according to fault encourages the broadest possible contribution procedure.

There are policy reasons, noted by HOVIC, against contribution among nondefendants—judicial economy and finality of judgment being primary. While these are significant policies, neither in Gomes nor in § 1451 do they appear as guiding considerations. Thus, while such policies are important in determining the "best" rule of law, they are less applicable in determining the actual implications of § 1451: the policies emphasized in the judicial precursor Gomes carry more weight. The goal of § 1451 generally is to modify the harsh consequences of common law rules. Keegan v. Anchor Inns, Inc., 606 F.2d 35, 39 (3rd Cir. 1979). It would be anomalous to acknowledge the liberalizing substantive thrust of this statute and simultaneously interpret it restrictively from a procedural viewpoint.

■ This Court finds, in the light of the available evidence, that 5 V.I.C. § 1451 does not limit the procedure of contribution. With no specific Virgin Islands law on this issue, the question becomes one of the procedural law of this Court. Defendant acknowledges in one of its memoranda that if the question of the availability of contribution here were purely procedural, its position would be untenable. Under Rule 14 Fed. R. Civ. P., Beloit could have impleaded HOVIC as a third-party defendant in the original action. However, the provisions of Rule 14 are not mandatory: a party may refrain from impleading a third-party defendant in favor of asserting his claim in an independent action. Wright and Miller, Federal Practice and Procedure, § 1442; 3 Moore's Federal Practice, 2d Ed., § 14.06; Union Paving Co. v. Thomas, et al., 9 F.R.D. 612 (D.C. Pa. 1949);

3 Moore's Federal Practice § 14.06 states on point:

> Thus, it is no defense to an action for contribution that the plaintiff, when originally sued by the injured party in a federal court, failed to bring in the defendant as a third party.

Beloit's invocation of the RESTATEMENT (SECOND) OF TORTS § 886A approval of a separate action for contribution is apt but superfluous. If § 1451 did in fact restrict contribution, it would be local law to the contrary which would override the applicability of the restatement law to the Virgin Islands under 1 V.I.C. § 4; but as § 1451 does not restrict contribution, Rule 14 Fed. R. Civ. P. controls.

■ Thus, this Court holds that Count II for contribution in this case is proper under Rule 14 Fed. R. Civ. P., since Virgin Islands law does not forbid the contribution procedure in this case.

## ORDER

The premises considered and the Court being fully advised,

IT IS HEREBY ORDERED

That defendant HOVIC's motion for judgment on the pleadings on Count Two be, and the same hereby is, denied.

