**IN RE: KELVIN MANBODH ASBESTOS LITIGATION SERIES; KELVIN MANBODH, ET AL., Plaintiffs**

**v.**

**HESS OIL VIRGIN ISLANDS CORPORATION, ET AL., Defendants**

**HESS OIL VIRGIN ISLANDS CORPORATION, Third Party Plaintiff**

**v.**

**LOCKHEED MARTIN CORPORATION, ET AL., Third Party Defendants.**

**LITWIN CORPORATION and LITWIN PAN-AMERICAN CORPORATION, Third Party Plaintiffs,**

**v.**

**UNIVERSAL OIL PRODUCTS COMPANY, ET AL., Third Party Defendants.**

Master Docket No.: 324/1997, Civil No. 324/1997

Superior Court of the Virgin Islands

Division of St. Croix

March 3, 2006

BRITAIN H. BRYANT, ESQ., Bryant, Barnes, Moss, & Beckstedt LLP, St. Croix, VI, *Attorney for Third-Party Plaintiff Hess Oil Virgin Islands Corp.*

376

W. MARK WILCZYNSKI, ESQ., Wilczynski & Garten, St. Thomas, VI, *Attorney for Third-Party Plaintiff Litwin Corp.*

KEVIN A. RAMES, ESQ., Kevin A. Rames, P.C., Christiansted, St. Croix, VI, *Attorney for Shell Oil Company and Exxon-Mobil Corporation.*

TERRI GRIFFITHS, ESQ., Mackay & Hodge, St. Thomas, VI, *Attorney for Nalco Company.*

MARIA TANKENSON HODGE, ESQ., ADAM G. CHRISTIAN, ESQ., Hodge & Francois, St. Thomas, VI, *Attorneys for Chicago Bride & Iron, N.V. and Parsons Infrastructure and Technology Group, Inc., and CBI Services, Inc.*

SIMONE R.D. FRANCIS, ESQ., Ogletree, Deakins, Nash, Smoak, & Stewart LLC, St. Thomas, VI, *Attorney for 3M, a/k/a Minnesota Mining & Manufacturing Co. and 3M of Puerto Rico.*

RICHARD H. HUNTER, ESQ., Hunter, Cole & Bennett, Christiansted, St. Croix VI, *Attorney Childers Products Co.*

JOHN H. BENHAM, ESQ., Watts, Benham, & Sprehn P.C., St. Thomas, VI, *Attorney; Resco Products, Inc.*

CABRET, *Judge*

## MEMORANDUM OPINION

(March 3, 2006)

THIS MATTER is before the Court on fourteen Motions to Dismiss and Motions for Summary Judgment filed by Third-Party/Cross-Claim Defendants[1] [hereinafter "TPDs"] concerning the common law contribu-

---

[1] These motions include: (1) Chicago Bridge & Iron, N.V.'s [hereinafter "CB&I"] Motion for Summary Judgment on Counts I and II of HOVIC Third-Party Complaint filed on October 20, 2003; (2) Parsons Infrastructure and Technology Group, Inc.'s Motion for Summary Judgment on Counts I and II of HOVIC Third-Party Complaint filed on October 20, 2003; (3) CB&I's Motion for Summary Judgment on Third-Party Complaint of Litwin filed on December 31, 2003; (4) 3M Motion to Dismiss filed on January 31, 2005; (5) 3M of Puerto Rico Motion To Dismiss filed on January 31, 2005; (6) Exxon-Mobil Corporations Motion to Dismiss or in the Alternative for Summary Judgment filed on January 31, 2005; (7) Shell Oil Company's Motion to Dismiss or in the Alternative for Summary Judgment filed on January 31, 2005; (8) CBI Services' Motion to Dismiss HOVIC's Third Amended Third-Party Complaint filed on February 1, 2005; (9) Parsons Infrastructure and Technology Group, Inc.'s Motion to Dismiss HOVIC's

377

tion and indemnification counts of the Third-Party Complaints and Cross-Claim Complaints of Third-Party Plaintiff/Cross-Claimant Hess Oil Virgin Islands Corporation [hereinafter "HOVIC"] and Third-Party Plaintiff Litwin Corporation [hereinafter "Litwin"]. HOVIC and Litwin opposed all motions, to which several TPDs replied.[2] Subsequently, other TPDs joined in many of these motions to dismiss and motions for summary judgment.[3] The Court heard oral arguments from all parties to these motions on May 4, 2005.[4] For the reasons contained herein, after a review of the memoranda and the hearing transcript, the Court will convert all motions to dismiss to motions for summary judgment. In so

---

Third Amended Third-Party Complaint filed on February 1, 2005; (10) CB&I's Motion to Dismiss Litwin Corp.'s Amended Third-Party Complaint filed on February 1, 2005; (11) Parsons Infrastructure and Technology Group, Inc.'s Motion to Dismiss Litwin Corp.'s Amended Third-Party Complaint filed on February 1, 2005; (12) Childers Products Company's Motion to Dismiss Litwin's Amended Third-Party Complaint filed on February 1, 2005; (13) Nalco Company's Motion to Dismiss filed on February 3, 2005. In addition to the motions that were argued, Resco Products Inc.'s Motion to Dismiss will be considered for the purposes of conversion.

[2] CB&I, CBI Services, Parsons Infrastructure and Technology Group, Inc., Childers Products Company, Nalco Company, 3M, and 3M of Puerto Rico all filed replies to the respective oppositions.

[3] Third-Party and Cross-Claim Defendants Alltite Gasket Company, Control Associates, Inc., The G.C. Broach Co., Garlock, Inc., P.H. Sales, Inc., Union Pump Co., Brown Fintube Company LP, Zinklahoma, Inc, Koch Engineering Company, Amdura Corporation, and John Crane Inc. have joined in assorted motions to dismiss and motions for summary judgment.

[4] In advance of oral arguments, parties were instructed by order to be prepared to answer the following queries, in addition to the issues raised in the memoranda:

1. What is the governing law of the Virgin Islands with respect to common law contribution and indemnification?

2. Have any of the American Law Institute's Restatements of Law relating to these causes of action ever been judicially adopted by the Appellate Division or the Third Circuit Court of Appeals?

3. Does the expiration of the statute of limitations at the time of settlement act as a discharge by application of law for the purposes of establishing the elements of common law indemnification, as contemplated in the Restatement (Third) of Torts: Apportionment of Liability § 22, comment b?

4. Are the relationships between Third-Party Plaintiffs HOVIC/Litwin Corp. and Third Party Defendants the type of relationships that may give rise to vicarious liability?

5. Have any other jurisdictions ever specifically held that such relationships are proper bases for the extension of vicarious liability?

(Feb. 18, 2005 Order Concerning Supplementary Briefing and Oral Arguments at 2-3) (numbers added).

378

doing, this Court will allow all parties to these motions reasonable time to present all material made relevant by this opinion.

## I. BACKGROUND

To resolve pre-trial matters, this Court, in May 1997, consolidated in a single docket, *In re Kelvin Manbodh Asbestos Litigation Series,* lawsuits filed on behalf of Plaintiff Kelvin Manbodh and 210 additional parties against HOVIC, Litwin, and some twenty-six other defendants. Litwin and HOVIC filed motions seeking leave to file third-party complaints in October and November 2001, respectively. These initial motions, granted shortly thereafter, sought to implead parties only with respect to the four cases set for trial. HOVIC's third-party claims and cross-claims and Litwin's third-party claims were severed from the first-party matters in October 2002. After claims between HOVIC, Litwin and First-Party Plaintiffs were settled in January 2003, subsequent motions to amend by HOVIC and Litwin, impleading previously named and additional defendants in all remaining first-party cases, were granted in October 2004. In all, some eighty-seven additional companies, including the movants, were brought into this litigation as third-party defendants.

In both their Motions to Dismiss and Motions for Summary Judgment, TPDs assert as their primary contention that dismissal or summary judgment is appropriate under the provisions of the Restatement (Third) of Torts: Apportionment of Liability because HOVIC cannot as a matter of law establish all essential elements of its common law contribution and indemnification claims. In particular, TPDs argue that HOVIC fails to establish or even allege that it discharged TPDs' liability to the Plaintiffs. TPDs maintain that for HOVIC to assert such claims it must confer this benefit on the TPDs. HOVIC maintains that Virgin Islands law does not require a discharge of TPDs' liability. Additionally, HOVIC claims that the running of the statute of limitations of the Plaintiffs' claims against the TPDs operates the same as releases from liability by settlement or judgment such that they all constitute discharges of liability.

TPDs level similar arguments against Litwin. Litwin contends that the grant of summary judgment or a dismissal is improper for several reasons. Among them, Litwin argues that the Plaintiffs' claims against it are still contingent. Litwin insists that because its initial complaint was filed before a settlement was achieved with the First-Party Plaintiffs and

no stipulation for dismissal has been entered in that matter, it may therefore rest on the allegations in its complaint to withstand motions to dismiss. Alternatively, Litwin argues, like HOVIC, that if a discharge is required, the running of the statute of limitations constitutes a discharge by application of law sufficient for common law indemnification and contribution causes of action to stand. Finally, Litwin asserts that because the Virgin Islands follow the principles of joint and several liability, a settlement by one tortfeasor automatically discharges any other potential tortfeasor. Since the Court will convert the Motions to Dismiss to Motions for Summary Judgment, it will reserve comment on the factual arguments articulated by the parties until they have been allowed a reasonable opportunity to present all relevant material.

## II. STANDARDS FOR DISMISSAL AND SUMMARY JUDGMENT

█ The Motions to Dismiss before this Court assert that the common law contribution and indemnification counts contained in HOVIC's and Litwin's pleadings fail to state claims upon which relief can be granted. *See* SUPER. CT. R. 7; FED. R. CIV. P. 12(b)(6). A court considering a motion to dismiss under Rule 12(b)(6) shall deny the motion unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In applying this standard, a court shall assume all reasonable factual allegations in the complaint as true and draw all fair inferences from such allegations. *Gov't of Virgin Islands v. Lansdale*, 172 F. Supp. 2d 636, 649 (D.V.I. App. Div. 2001). Allegations will not be reasonable, nor will inferences in favor of the plaintiff be fair, where they contradict facts either contained in the public record or judicially noticed by the Court. *See Johns v. Town of East Hampton*, 942 F. Supp. 99, 104 (E.D.N.Y. 1996); *Employers Ins. of Wassau v. Mussick Peeler & Garrett*, 871 F. Supp. 381, 385 (S.D. Ca. 1994) (citations omitted). *See generally Gov't Guarantee Fund of the Republic of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 448-49 (D.V.I. 1997).

The standard governing summary judgment in the Superior Court is found in Rule 56 of the Federal Rules of Civil Procedure. SUPER. CT. R. 7; FED. R. CIV. P. 56; *see Green v. Hess Oil V.I. Corp.*, 29 V.I. 27, 30 (Terr. Ct. 1994) (applying Federal Rule 56 to a motion for summary judgment). Summary judgment is appropriate where "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). While substantive law will determine if a fact is material, whether a dispute of material fact is genuine instead turns on the presence of evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Courts deciding whether such genuine issues exist shall view the facts in a light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Christopher v. Davis Beach Co.*, 15 F.3d 38, 40 (3d Cir. 1994). Consequently, the initial burden of proof for summary judgment lies with the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Once the moving party has carried its burden of establishing the absence of genuine issues of material fact, however, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

Where the nonmoving party bears the burden of proof at trial and the essential elements are at issue, "it must by affidavits or by the depositions and admissions on file 'make a showing sufficient to establish the existence of [every] element essential to that party's case.'" *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir. 1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50. Nevertheless, a trial court should act with an abundance of caution in granting summary judgment, and may deny summary judgment where there is reason to believe that the better course would be to proceed to a full trial. *Id.* at 254.

## III. CONVERSION STANDARD

 Rule 12(b) of the Federal Rules of Civil Procedure instructs this Court when a conversion from a motion to dismiss to one for summary judgment is appropriate. It provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 [of the Federal Rules of Civil Procedure], and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

FED. R. CIV. P. 12(b). What constitutes a matter outside the pleadings has been the subject of considerable discussion. *See generally* 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1366 (3d ed. 2004) [hereinafter "WRIGHT & MILLER"]. Generally, "any written or oral evidence introduced in support of or in opposition to the motion challenging the pleading, that provides some substantiation for and does not merely reiterate what is said in the pleadings," will constitute a matter outside the pleading for the purpose of triggering a conversion, if not excluded. *Id.* at 180. The following, however, may be considered by a court without requiring the conversion of a motion: (1) exhibits attached to the pleadings, (2) matters that the court can take judicial notice of, and (3) items of unquestioned authenticity that are referred to in the challenged pleading and are integral to the pleader's claim for relief. *Id.* at 184-85. Similarly, allegations made in the memoranda, in support of or in opposition to a motion to dismiss, do not constitute matters outside the pleadings. *Id.* at 182-83.

At issue in the motions to dismiss before this Court, and prompting this conversion discussion, are releases that concern the potential liability of HOVIC and Litwin to the First-Party Plaintiffs. These releases are attached to all the motions for summary judgment and their contents are described in all the motions to dismiss as the basis for the TPDs' assertion that HOVIC and Litwin failed to discharge the TPDs' potential liability to the First-Party Plaintiffs. Before this Court may consider these releases, it must determine whether they constitute matters outside the pleadings.

To begin, HOVIC and Litwin did not attach the releases to the pleadings as exhibits. The releases were also not referred to by either HOVIC or Litwin in any of their pleadings, nor were they central to any

of their claims for relief.[5] Finally, the contents of the releases, in particular the limited number of parties actually released, are not the type of material that may be judicially noticed.[6] Therefore, the releases, in the context of the TPDs' intended use, constitute matters outside the pleadings.

The decision to consider matters outside the pleadings and convert a pending motion is committed to the complete discretion of the trial court; yet, the Court recognizes that it should only be undertaken with "great

---

[5] 3M, 3M of Puerto Rico, Shell, Mobil, CBI Services, Inc., Parsons Infrastructure and Technology Group, Inc. and Chicago Bridge & Iron, N.V., all argue to varying degrees that these releases may be judicially noticed because they are part of the judicial record and their authenticity has not been challenged. (*See e.g.,* Mem. Reply to Opp'n to Parsons' Mot. to Dismiss Litwin Corp. Am. Third-Party Compl. at 4 (citing *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 259 (3d Cir. 1998)).) This reading conflates two of the exceptions to the general prohibition of considering evidence on a motion to dismiss. Although the authenticity of the releases may not have been challenged, this fact alone will not allow the Court to consider them. The TPDs' position evidences a misunderstanding about the scope of the authenticity exception. This exception strikes a balance between Rule 10(c) and Rule 12(b) of the Federal Rules of Civil Procedure. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431-32 (7th Cir. 1993). If authenticity is uncontested, the exception allows for the consideration of documents on a defendant's motion to dismiss (1) on which the plaintiff (HOVIC or Litwin) expressly relies in its pleading; (2) that are central to the plaintiff's claim for relief; and (3) that the plaintiff failed to attach to pleading. *See* FED. R. CIV. P. 10(c); 5C WRIGHT & MILLER, *supra* § 1366 at 184-85. Because Rule 10(c) allows for attachment of such documents but does not require it, this exception is meant to provide for the consideration of the pleadings as they may have been fashioned had the plaintiff attached the documents in question. *See Venture Assocs. Corp.,* 987 F.2d at 431-32. Here, the pleadings allege a potential liability to the Plaintiffs and that HOVIC and Litwin were seeking a contingent judgment. Neither HOVIC nor Litwin relied on these releases. The releases are not central to HOVIC's or Litwin's theory of the case either. In fact, the release-settlement theory is inconsistent with the contingent-judgment theory contained in HOVIC's and Litwin's Complaints.

[6] Judicially noticing that HOVIC and Litwin entered into a settlement with the First-Party Plaintiffs, however, may be proper. (Childers Products Co. Mot. to Dismiss Litwin's Amended Third-Party Compl. at 2.) This distinction should highlight that the permissible use for judicially noticed materials is to show the existence, not the truth, of the matter asserted. 5C WRIGHT & MILLER, *supra* § 1364 at 138-39 (citing cases). The process of assessing the contents of the releases to determine the scope of the release is more akin to the latter, than the former. *See S. Cross Overseas Agencies, Inc. v. Wah Kong Shipping Group, Ltd.,* 181 F.3d 410, 426-27 (3d Cir. 1999) (analogizing this inquiry to the hearsay rule).

caution and attention to the parties' procedural rights."[7] 5C WRIGHT & MILLER, *supra* § 1366 at 149, 159; *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 904-05 n.5 (3d Cir. 1997) (acknowledging that a court has discretion to convert a motion dismiss). Conversion is justified where it is "likely to facilitate the disposition of the action," because the "extra-pleading material is comprehensive and will enable a rational determination of a summary judgment motion." 5C WRIGHT & MILLER, *supra* § 1366 at 165. Mindful of these considerations, the Court will now set forth its reasons for converting the instant motions.

■ Because of the complex procedural posture of this case, the Court is faced with motions to dismiss and motions for summary judgment that turn on the same ultimate issue: whether HOVIC and Litwin discharged the potential liability of the TPDs. The sample releases submitted to the Court are probative on this issue and constitute "matters outside the pleadings," prompting a conversion if considered. If the releases endorse the proposition that TPDs assert, this reality may make the extra-pleading material comprehensive and might enable the rational determination of summary judgment. A conversion, then, would promote the interests of judicial economy by consolidating the motions practice and avoiding any further delay in a decision on the pending motions concerning the viability of common law contribution and indemnification actions.

## IV. DISCUSSION

At the heart of the parties' dispute is the identification of the governing law for common law contribution and indemnification. Relying on their interpretation of title 1, section 4 of the Virgin Islands Code, TPDs argue that the Restatement (Third) of Torts: Apportionment of Liability, the most recent Restatement approved by the American Law Institute, governs both common law indemnification and contribution. HOVIC and Litwin counter that the Restatements do not apply to common law contribution, because there is local law to the contrary,

---

[7] These procedural rights include both notice to the litigants of the intended change and a reasonable opportunity to present all material made relevant to a Rule 56 motion. 5C WRIGHT & MILLER, *supra* § 1366 at 188. Rule 56(c) of the Federal Rules of Civil Procedure, together with Rule 12(b), requires ten days advance notice to the parties prior to the determination of a motion for summary judgment. *See* FED. R. CIV. P. 56(c), 12(b); *see generally* 10A WRIGHT & MILLER, *supra* § 2719 at 308-10 (3d ed. 1998).

namely, *Gomes v. Brodhurst*, 394 F.2d 465 (3d Cir. 1968) and section 1451(d) of title 5 of the Virgin Islands Code, as interpreted by *Beloit Power Systems v. Hess Oil Virgin Islands Corp.*, 18 V.I. 317, 323-26 (D.V.I. 1981) [hereinafter "*Beloit I*"]. Additionally, HOVIC and Litwin[8] argue that the adoption of the provisions of the Restatement (Second) of Torts by *Dublin v. Virgin Islands Telephone Corp.*, 15 V.I. 214 (Terr. Ct. 1978), precludes the application of the Restatement (Third): Apportionment of Liability to common law indemnification actions. According to HOVIC and Litwin, continued reliance on *Dublin* is justified because the Restatement (Second) constitutes the prevailing common law of the United States. Since the Motions for Summary Judgment hinge on whether HOVIC and Litwin need to establish the discharge of the TPDs' liability, this section shall identify the applicable substantive law to frame what material will be pertinent with respect to the parties' reasonable opportunity to be heard and thereby rein in potentially voluminous submissions.

## A. Common Law Contribution in the Virgin Islands

In the instant matter, the parties disagree over the impact that *Gomes* and section 1451(d), as interpreted by *Beloit I*, have on the current common law contribution landscape. The Virgin Islands judicially recognized a cause of action for common law contribution between joint tortfeasors in 1968, when the Third Circuit Court of Appeals endorsed the prevailing trend in the United States and departed from the English common law's prohibition on contribution. *See Gomes*, 394 F.2d 465; cf. RESTATEMENT (FIRST) OF RESTITUTION § 102 (1937) (denying the right to contribution among joint tortfeasors because of the wrongful nature of their conduct, despite expressly providing for contribution among other parties in section 81).[9] At the time of the *Gomes* decision, the

---

[8] During oral arguments, Litwin argued that section 886B of the Restatement (Second) of Torts "is the law of the land." (May 4, 2005 Tr. at 47:20-22.) In previously filed memoranda, Litwin argued that section 22 of the Restatement (Third) of Torts: Apportionment of Liability governed common law indemnification causes of action. (Litwin Opp'n to Childers' Mot. to Dismiss at 7.) Such a change of position emphasizes the need for the Court to identify the governing substantive law.

[9] The reservation over whether to allow contribution actions between joint tortfeasors stems from the prohibition of such actions between intentional tortfeasors. RESTATEMENT (SECOND) OF TORTS § 886A cmt. a (1979). Specifically, courts did not want to allow anyone to "found a cause of action upon his own deliberate wrong." *Id.* Over time, many

Restatement of Torts did not contain any provisions pertaining to contribution and although not discussed by the panel in *Gomes,* the Restatement (First) of Restitution specifically prohibited such contribution. Falling short of expressly rejecting the Restatement of Restitution, the *Gomes* court instead relied on principles of "reasoned fairness" to conclude that contribution should be allowed among joint tortfeasors. *Gomes,* 394 F.2d at 467.

The *Gomes* result was subsequently codified by the Legislature with the enactment of title 5, section 1451(d) in 1973, allowing for contribution among co-defendants in conjunction with the adoption of a comparative fault framework. That subsection provides, in relevant part:

> (d) Where recovery is allowed against more than one defendant, the trier of fact shall apportion, in dollars and cents, the amount awarded against each defendant. Liability of defendants to plaintiff shall be joint and several but, *for contribution between defendants, each defendant shall be liable for that proportion of the verdict as the trier of fact has apportioned against such defendant ...*

5 V.I.C. § 1451(d) (emphasis added). It is noteworthy that section 1451 refers to contribution within subsection (d), only in passing. There are no other provisions within the Virgin Islands Code that specifically or generally discuss or refer to a cause of action for contribution.

In the years since *Gomes,* neither the Third Circuit Court of Appeals nor the Appellate Division has specifically endorsed either the Restatement (Second) of Torts, adopted in 1979, or the Restatement (Third) of Torts: Apportionment of Liability, adopted in 2000 and cited by TPDs as controlling, for common law contribution. Several District Court and Territorial Court opinions, however, cite approvingly to the Restatement (Second) of Torts provisions.[10] While these decisions are

---

jurisdictions have concluded that such reasoning and the accompanying hesitation had little place in the allocation of fault between two negligent parties. *Id.*

[10] *See generally Beloit Power Sys. v. Hess Oil V.I. Corp.,* 19 V.I. 519, 530-31 (D.V.I. 1983) *rev'd in part by* 757 F.2d 1427 (3d Cir. 1985) *aff'd in part by* 757 F.2d 1431 (3d Cir. 1985) [hereinafter "*Beloit II*"] (reinforcing previous decision allowing for a common law contribution cause of action between two parties under the Restatement (Second) of Torts section 886A, even if they were not joined as co-defendants); *Beloit I,* 18 V.I. at 323-26 (analyzing the statutory framework for section 1451, to determine that statute is primarily a comparative negligence statute and does not definitively restrict contribution or constitute local law to the contrary of the Restatement); *Lentz v. Freeman Assocs.*

neither binding nor dispositive of the matters before the Court, the analysis in *Beloit I* of section 1451(d), as it relates to contribution, is particularly instructive.

The claim in *Beloit I* arose from plaintiff Beloit's satisfaction of a jury verdict awarded to a worker who was injured while installing Beloit equipment at the HOVIC refinery. *See generally Murray v. Beloit Power Sys.*, 450 F. Supp. 1145 (D.V.I. 1978) *aff'd sub nom. Murray v. Fairbanks Morse*, 610 F.2d 149 (3d Cir. 1979). Beloit brought a contribution action against HOVIC, arguing that HOVIC was liable in contribution because it was a joint tortfeasor. HOVIC resisted suit, however, claiming that section 1451(d) limited contribution actions to co-defendants and that since it had not been named as a defendant in the original action, it was protected from contribution by section 1451(d). Therefore, the issue in *Beloit I* was not whether Beloit had satisfied the elements for contribution, but instead, whether the language of section 1451(d) precluded actions for contribution against parties who were not co-defendants. With the breadth of section 1451(d) squarely raised by the parties, the District Court in *Beloit I* analyzed its statutory framework and rejected HOVIC's narrow reading of section 1451(d). *Beloit I*, 18 V.I. at 322. Instead, the Court found that contribution actions should be permitted by joint tortfeasors in the Virgin Islands, regardless of whether they had been co-defendants. *Id.* at 326. The Court reasoned that "it would be anomalous to acknowledge the liberalizing substantive thrust of this statute and simultaneously interpret it restrictively from a procedural viewpoint." *Id.*

---

*Caribbean, Inc.*, 441 F. Supp. 892, 894-95 (D.V.I. 1977) (finding that Virgin Islands Government's limited liability with respect to contribution claims did not disturb joint and several liability of co-defendants under section 1451(d)); *Dublin v. V.I. Tel. Corp.*, 15 V.I. 214, 225-26 (Terr. Ct. 1978) (following *Gomes* and providing that contribution may exist between co-defendants and third-party defendants alike in applying RESTATEMENT (SECOND) OF TORTS section 886A).

## B. *Gomes* and Section 1451(d), as Interpreted by *Beloit I,* Do Not Prevent the Adoption of Restatement Provisions as the Source of Substantive Law for Common Law Contribution

Relying on the mandate of title 1, section 4,[11] the TPDs contend that neither *Gomes* nor section 1451(d) constitute local law to the contrary of the Restatement (Third) of Torts: Apportionment of Liability and thus, the Restatement (Third), including its requirement of a discharge, must govern this dispute as the most recent installment of the Restatement. In contrast, HOVIC and Litwin argue that *Gomes* and section 1451(d), as interpreted by *Beloit I,* serve as local law to the contrary of any Restatement provisions and thus, preclude the Court from applying any Restatement. Because the courts in *Gomes* and *Beloit I*[12] and the Legislature in section 1451(d) failed to discuss the requirement of a discharge, Litwin and HOVIC argue that no such requirement should be held to exist.

The Court disagrees with the arguments of the TPDs, HOVIC and Litwin. First, neither *Gomes* nor section 1451(d), as interpreted by *Beloit I,* constitute local law to the contrary of the Restatement (Second) or (Third) of Torts. Accordingly, these Restatements may serve as the possible sources of substantive law for common law contribution. HOVIC's and Litwin's argument belies the fundamental basis of the *Beloit I* opinion: courts should not read a "failure to enact a mandate as a contrary mandate." *Beloit I,* 18 V.I. at 324, 326. Second, the Court is not compelled to apply the Restatement (Third) of Torts: Apportionment of Liability because it is the most recent installment by the American Law Institute. The Court must apply the common law majority rule where

---

[11] The statute provides:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

V.I. CODE ANN. tit. 1, § 4 (1995).

[12] As a secondary argument, Litwin and HOVIC highlight *Beloit I*'s reference to section 886A of the Restatement (Second) of Torts concerning contribution as being "superfluous." The Court notes, however, that the Restatement would have been superfluous only if the *Beloit I* Court had found that section 1451 constituted local law to contrary of the Restatement. As explained in the body of this opinion, the court did not.

there is no local law to contrary, and such a rule may be found first, in any of the Restatements or second, in the rules of decision of the courts of the United States. *See Varlack v. SWC Caribbean, Inc.*, 13 V.I. 666, 680-85, 550 F.2d 171, 178-80 (3d Cir. 1977*); In re Manbodh Asbestos Litig. Series*, Civ. No. 324-1997 (Super. Ct. Nov. 28, 2005). Thus, the Court must first consider whether any binding precedent in this area exists that prevents the application of Restatement provisions and if not, which Restatement, if any, contains the common law majority rule.

The requirement of a discharge, central to the instant motions, was not at issue in either *Gomes* or *Beloit I.* In *Gomes,* the Third Circuit reviewed the District Court's determination that a settlement by a co-defendant prior to trial did not shield the remaining defendant from plaintiff's claims. *Gomes*, 394 F.2d at 466. In affirming the District Court's decision in part, the Third Circuit Court of Appeals held, at a rehearing, that the plaintiff could still maintain his claims against the non-settling defendant; the court provided, however, that where the non-settling defendant was found liable, consistent with the notions of contribution, that defendant would be credited with an offset against the award for the proportional amount attributable to the settling defendant. *Id.* at 468. This result was predicated on the policies of equitable distribution of liability among joint tortfeasors and an aversion to double recovery by the plaintiff. *See Id.* at 467-70. The recognition of contribution was necessary for the court in *Gomes* to allocate such a credit. At the time, however, the court was not concerned with identifying the elements of common law contribution.

*Beloit I* involved the satisfaction of a judgment. Since there is joint and several liability in the Virgin Islands, any tortfeasor found liable is liable for the entire judgment. The question concerning the requirements of contribution, including a potential discharge, was not raised because even if the party satisfying the judgment had a meritorious claim for contribution or indemnity, the satisfaction of a judgment discharged the entire claim. Thus, the Court in *Beloit I* had no need to discuss whether a discharge was required for an action for contribution to stand, because a total discharge occurred by the satisfaction of the judgment.

Also, while section 1451(d) is silent on the discharge issue, this silence fails to compel the conclusion that there is no requirement of a discharge for common law contribution in the Virgin Islands. The legislative history of section 1451 of title 5 of the Virgin Islands Code

conveys that the Legislature was primarily concerned with removing the contributory negligence bar to recovery that previously existed in the Virgin Islands, and not with supplying the elements for contribution actions. *See Beloit I*, 18 V.I. at 324. As concluded in *Beloit I*, section 1451 is "primarily a comparative negligence rather than a contribution statute." *Beloit I*, 18 V.I. at 323 (referencing ROBERT E. KEETON, VENTURING TO DO JUSTICE: REFORMING PRIVATE LAW 94-95 (1969) for the proposition that comparative fault statutes should be interpreted restrictively) [hereinafter "KEETON"]. It follows from *Beloit I*'s characterization of section 1451 that a court should not interpret the limited reference to contribution among co-defendants in the Code as excluding other forms and modes of contribution. *Beloit I*, 18 V.I. at 322-23 (relying on KEETON, *supra* at 94-95).

For the same reason, the Court should not interpret the failure to discuss the substantive elements of contribution in *Gomes* and *Beloit I*, as denying their existence. As the elements of contribution are beyond the core area of section 1451, the Court should look to the policy and principles supporting this statute and resolve this dispute in a manner that "produces the best total set of rules." *Id.* at 322 (quoting KEETON, *supra*, at 94-95). As the jurisdiction survey that follows indicates, an adoption of a Restatement provision that reflects the common law majority rule likely would lead to that best total set of rules.

Most other jurisdictions have adopted some form of substantive law with respect to contribution, whether it is from a Uniform Act or some other source. 7A AM. JUR. PLEADING AND PRACTICE FORMS *Contribution* § 8 at 101 (1995). In fact, of the forty-three (43) states that allow for contribution, thirty-seven (37) of them do so with substantive statutes that expressly provide the elements of the cause of action. *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 23 rptr. notes cmt. a (2000). In light of these facts, the Court should look to a Restatement to supplement the limited local law on the subject. Thus, this Court will endorse the particular Restatement which accurately summarizes the common law majority rule, as required under title 1, section 4.

## C. Common Law Indemnification in the Virgin Islands

There is limited guidance for courts concerning common law indemnification as no statutes codify common law indemnification, nor

do any Virgin Islands appellate courts specifically recognize such a cause of action.[13] As a result, as with common law contribution, TPDs assert that the Restatement (Third) of Torts: Apportionment of Liability governs common law indemnification. In stark contrast to their respective positions regarding common law contribution, HOVIC and Litwin agree that a Restatement should supply the substantive elements for such a cause of action, though they argue instead, relying on *Dublin,* that the Restatement (Second) of Torts should be the source of such law. The Court concurs that the Restatement may supply such substantive law, though the Court must identify which, if any, of the Restatements constitute the majority common law rule according to title 1, section 4.

## D. Choice of Law

Section 1451 and *Gomes* are consistent with the adoption of one of the Restatements as the source of substantive law. This is true only to the extent that a Restatement represents the common law majority rule and is not contrary to the limited local law on the subject. *See Varlack,* 13 V.I. at 680-85, 550 F.2d at 178-80 (3d Cir. 1977) (noting that the Legislature employed the Restatement because it "accurately summarized the [rules of the] common law," and that to accurately summarize the common law was to identify the majority rule). Because no particular Restatement has been adopted by the Legislature or the appellate courts of this

---

[13] *But see De Laval Turbine, Inc. v. West India Indus., Inc.,* 11 V.I. 220, 240-43 (3d Cir. 1974) (suggesting that *Gomes* adopted comparative fault framework and recognizing generally the propriety of contribution and indemnification causes of action). In contrast, trial courts have specifically applied the Restatements to noncontractual indemnity actions. *Continental Cas. Co. v. U.S. Trust Co.,* 19 V.I. 289, 291-92 (D.V.I. 1982) (applying provisions of the Restatement of Restitution, Restatement (Second) of Torts, and American Jurisprudence on Indemnity to deny a motion for summary judgment premised on the faulty logic a party could not secure a settlement as the basis for common law indemnification); *Dublin,* 15 V.I. at 225-27. In *Dublin v. V.I. Tel. Corp.,* the Territorial Court acknowledged that, although not discussed in *Gomes* or section 1451, the same strong policy justifications, if not stronger, support the recognition of a cause of action for common law indemnification. (Terr. Ct. 1978). Of note, *Dublin* referenced a series of Restatement of Restitution provisions and then a tentative draft of the RESTATEMENT (SECOND) TORTS section 886B for basis of such a cause of action. *Dublin,* 15 V.I. at 226-27. For the reasons stated in *Dublin,* because a cause of action for common law indemnification has received far greater acceptance at common law than one for contribution, this Court continues to recognize such a cause of action. *Id.* at 226 (citations omitted).

jurisdiction, an analysis of the potentially applicable Restatement provisions will be required. *In re Manbodh Asbestos Litig. Series*, Civ. No. 324-1997, 2005 WL 3487838, at *2-12. A searching inquiry into the governing law is necessary because the RESTATEMENTS (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY sections 1 through 26, the RESTATEMENT (SECOND) OF TORTS sections 876 through 886B, and the RESTATEMENT (FIRST) OF RESTITUTION sections 76 through 102 offer different approaches to the apportionment of liability.

The Restatement (First) is the proper starting point to search for the common law majority rule. *In re Manbodh Asbestos Litig. Series*, Civ. No. 324-1997, 2005 WL 3487838 at *9-10; V.I. CODE ANN. tit. 1, § 4 (1995). The Restatement (First) of Restitution, in particular its prohibition of contribution among joint tortfeasors, however, no longer represents the majority rule. *See Varlack*, 13 V.I. at 680-81, 550 F.2d at 178; *Gomes*, 394 F.2d at 467-68; *Dublin*, 15 V.I. at 225-27; RESTATEMENT (SECOND) OF TORTS § 886A rptr. notes (acknowledging that a majority of states have abandoned the English rule's prohibition of contribution). Furthermore, the portions of the Restatement (First) of Restitution that continue to be generally accepted and sound have been adopted in the Restatement (Second) of Torts and Restatement (Third) of Torts. *See generally* RESTATEMENT (SECOND) OF TORTS §§ 876-886B, RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY §§ 1-26. Thus, where the Restatement (First) no longer represents the majority rule, the Court shall consult the subsequent installments of the Restatement, in search of the majority position. *In re Manbodh Asbestos Litig. Series*, Civ. No. 324-1997, 2005 WL 3487838, at *9.

A brief comparison of the two versions of the Restatement of Torts is critical for deciding which one more accurately summarizes the current majority rule. With contribution, the Restatement (Second) of Torts indicates that a plaintiff seeking contribution must establish both its own and the defendant's liability to the injured party. RESTATEMENT (SECOND) OF TORTS § 886A cmt. e. The Restatement (Second) of Torts also primarily advocates, as the previous majority rule, the division of contribution along pro-rata lines. *Id.* at cmt. h. Finally, under this Restatement the partial settlement of an injured party's claim by a plaintiff will not provide grounds for contribution against a defendant, even if the plaintiff has settled for more than plaintiff's respective share. *Id.* at cmt. f.

The Restatement (Third) of Torts: Apportionment of Liability takes opposite positions with respect to these matters. A settling plaintiff does not need to prove that it would have been liable to the injured party to assert a claim for contribution. RESTATEMENT (THIRD) OF ·TORTS: APPORTIONMENT OF LIABILITY § 23 cmt. c.[14] In addition, in recognition of the predominant change to comparative fault, the division of tort liability under the Restatement (Third) of Torts is now achieved through comparative fault percentages, the current majority position. *Id.* at cmt. e. This approach is consistent with section 1451 of title 5 of the Virgin Islands Code. Contribution causes of action under the Restatement (Third) of Torts are also not limited to claims that discharge the entire liability; such an action may arise for any amount a plaintiff pays above its percentage share. *Id.* at cmt. f. Finally, in an area unsettled as of the promulgation of the Restatement (Second) of Torts, under the Restatement (Third) a tortfeasor that settles before final judgment is not liable for contribution. *Id.* at cmt. i. This premise, found in the Restatement (Third), is consistent with the reasoning contained in *Gomes. See Gomes,* 394 F.2d at 468.

For indemnification, the analysis is similar. The Restatement (Third) of Torts reflects the recent trend in limiting common law indemnification to situations where the plaintiff is not negligent. Previously, under the Restatement (Second) of Torts, a negligent plaintiff could recover from a more negligent defendant in indemnification because such a result was necessary to soften the harshness of the rule of pro-rata contribution. *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 22 rptr. notes cmt. e. As a result of the trend towards comparative fault, indemnification is not permissible under the Restatement (Third) of Torts where both parties are actively negligent, though one, perhaps, to a lesser degree. *Id.* Lending further credence to the Restatement (Third), a bar to recovery in common law indemnification when plaintiff is negligent is the current majority position among states that recognize such a cause of action,[15] and is in concert with the Virgin Islands' allocation of fault on a

---

[14] This allowance exists to facilitate settlements. *Id.* The burden of proof regarding the defendant's liability, however, remains. RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 23 cmt. j.

[15] Of the jurisdictions that opined on this issue in past ten years, a decided majority limit recovery in indemnity to situations where the plaintiff was not at fault, but was held liable because of the existence of a vicarious liability relationship. *See e.g., Mizuho Corp.*

proportional basis contained in section 1451 of title 5 of the Virgin Islands Code.

In sum, while both the Restatement (Second) and the Restatement (Third) contain more modern approaches to common law contribution and indemnification, the Restatement (Third) represents the current majority substantive law. In the Restatement (Third), the drafters promote the interests of both flexibility and judicial economy by supplying security for settlors. Additionally, the Restatement (Third) abandons the perversion of indemnification dictated by the Restatement (Second)'s allegiance to pro-rata contribution, previously allowing for indemnity when the plaintiff was negligent, though comparatively less so than the defendant. Finally, the Restatement (Third) framework is also specifically tailored for application with comparative fault statutes, a majority position, as the indemnification discussion illustrates. *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 22 rptr. notes cmt. e. For all of these reasons, and in an effort to establish the best total set of rules by bridging the gaps in substantive tort law, this Court acknowledges the current majority rule and adopts the provisions of the RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY, Topic 3 for the substantive requirements for common law contribution and indemnification. *See Beloit I*, 18 V.I. at 322-23; RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY §§ 22-23 (including any cross-references therein). This decision is consistent with the policy considerations of encouraging settlement and

---

Bank (USA) v. Cory & Assocs., Inc., 341 F.3d 644 (7th Cir. 2003) (applying Illinois law); *Nichols v. CitiGroup Global Mkts., Inc.*, 364 F. Supp. 2d 1330 (N.D. Ala. 2004) (applying Alabama law); *Orient Overseas Container Line v. John T. Clark & Sons of Boston, Inc.*, 29 F. Supp. 2d 4 (D. Mass. 2002) (applying Massachusetts law); *Barry v. Hildreth*, 780 N.Y.S.2d 159 (App. Div. 2004); *Bowyer v. Hi-Lad, Inc.*, 609 S.E.2d 895 (W. Va. 2004); *Horowitz v. Laske*, 855 So.2d 169 (Fla. Dist. Ct. App. 2003); *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566 (Ind. Ct. App. 2003); *Med James, Inc. v. Barnes*, 61 P.3d 86 (Kan. Ct. App. 2003); *Hamway v. Braud*, 838 So. 2d 803 (La. Ct. App. 2002); *Carr v. Home Ins. Co.*, 463 S.E.2d 457 (Va. 1995). Those jurisdictions which still allow for indemnity where plaintiff is negligent, but comparatively less so than the defendant, either do not recognize an action for contribution (Vermont) or still award contribution on a pro-rata basis (the District of Columbia), such that allowing indemnity in these circumstances may soften a potentially harsh pro-rata allocation of liability. *See e.g., White v. Quechee Lakes Landowners' Ass'n, Inc.*, 742 A.2d 734 (Vt. 1999); *District of Columbia v. Washington Hosp. Ctr.*, 722 A.2d 332 (D.C. 1998).

the equitable distribution of liability considered in *Gomes. Gomes*, 394 F.2d at 468.

## V. CONCLUSION

In conclusion, the TPDs' motions to dismiss concerning HOVIC's and Litwin's common law indemnification and contribution causes of action will be converted to motions for summary judgment. The Restatement (Third) of Torts: Apportionment of Liability supplies the substantive law for both common law contribution and indemnification. The parties will be given reasonable opportunity to supply all material made pertinent to such motions for summary judgment by the substantive law identified in this opinion.